*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0365P (6th Cir.)
File Name: 02a0365p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

SANDRA MAXWELL GRIFFIN,
  *Petitioner-Appellant,*

  *v.*

SHIRLEY A. ROGERS, Warden,
  *Respondent-Appellee.*

No. 00-4116

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 99-01127—George C. Smith, District Judge.

Argued: September 18, 2002

Decided and Filed: October 18, 2002

Before: MARTIN, Chief Circuit Judge; MOORE, Circuit
Judge; WISEMAN, District Judge.[*]

_____

**COUNSEL**

**ARGUED:** Stephen P. Hardwick, PUBLIC DEFENDER'S
OFFICE, OHIO PUBLIC DEFENDER COMMISSION,
Columbus, Ohio, for Appellant. Thelma Thomas Price,

---

[*]The Honorable Thomas A. Wiseman, Jr., United States District
Judge for the Middle District of Tennessee, sitting by designation.

1

OFFICE OF THE ATTORNEY GENERAL, CORRECTIONS LITIGATION SECTION, Columbus, Ohio, for Appellee. **ON BRIEF:** Stephen P. Hardwick, PUBLIC DEFENDER'S OFFICE, OHIO PUBLIC DEFENDER COMMISSION, Columbus, Ohio, for Appellant. Thelma Thomas Price, OFFICE OF THE ATTORNEY GENERAL, CORRECTIONS LITIGATION SECTION, Columbus, Ohio, for Appellee.

————————

## OPINION

————————

KAREN NELSON MOORE, Circuit Judge. Petitioner Sandra Maxwell Griffin, a state prisoner, filed a petition for habeas corpus relief pursuant to 28 U.S.C. § 2254 on April 22, 1997, which was two days before her one-year period for filing for such relief was to expire. After that petition was dismissed without prejudice because Griffin had failed to exhaust state remedies, Griffin petitioned for state collateral relief. Her request for state relief was dismissed on September 22, 1999, and on October 15, 1999, she once again filed her habeas petition in federal court under the same case number as her previous filing. The district court struck her October 15 petition on the grounds that it should be given a new case number and assigned to a new judge. On October 25, it was assigned to a new judge, who dismissed it as time-barred. Because there is insufficient information in the record to determine whether Griffin is entitled to equitable tolling under *Palmer v. Carlton*, 276 F.3d 777 (6th Cir. 2002), we **VACATE** and **REMAND** for further proceedings on that issue.

## I.  BACKGROUND

In 1990, a trial judge in Ohio state court found Sandra Maxwell Griffin guilty of complicity to aggravated murder with specifications, complicity to unlawful possession of a dangerous ordnance, complicity to grand theft, and complicity to aggravated robbery with a firearm specification. Griffin

petition that very day. So the very latest that the petition could be interpreted to have been re-filed is October 22, which is still within thirty days of the state court dismissal, as *Palmer* requires.

Even if the State were correct that October 25 were the relevant date of filing, Griffin's petition would have been timely. Because Rule 26(B) motions are part of Ohio's direct appeal process, *White v. Schotten*, 201 F.3d 743, 752 (6th Cir.), *cert. denied*, 531 U.S. 940 (2000), and because 28 U.S.C. § 2244(d)(1) provides that the time for seeking direct review includes the ninety-day period for filing in the United States Supreme Court a petition for a writ of *certiorari* to the Ohio Supreme Court, the thirty-day period in which *Palmer* would require Griffin to return to federal court would not have begun to run until ninety days after the Ohio Supreme Court dismissed her Rule 26(B) appeal. Although we have rejected the proposition that tolling for the ninety-day period is available under § 2244(d)(2), *see Isham v. Randle*, 226 F.3d 691 (6th Cir. 2000), subsection (d)(1), which governs direct appeals, explicitly includes the "time for seeking [direct Supreme Court] review." 28 U.S.C. § 2244(d)(1). *See also Bronaugh*, 235 F.3d at 286 n.9 (making clear that *Isham*'s holding was limited to § 2244(d)(2)). Accordingly, the State's contention that *Palmer*'s thirty-day period began to run on September 22, 1999, is misplaced. As long as Griffin can show that she filed her Application to Reopen under Ohio Rule 26(B) in compliance with *Palmer*'s requirement for equitable tolling as discussed in Part II.B.2, *supra*, her petition was timely filed.

### III. CONCLUSION

We therefore **VACATE** the district court's order and **REMAND** for further proceedings on whether Griffin is entitled to equitable tolling under *Palmer*.

then obtained new counsel and unsuccessfully appealed her case to the Ohio Supreme Court, arguing that the trial court had violated her Fifth, Eighth, and Fourteenth Amendment rights by not following certain state laws regarding her waiver of trial by jury or by three-judge panel and regarding the length of her sentence. She lost her appeals, and her conviction became final in 1992.

The Antiterrorism and Effective Death Penalty Act (AEDPA) became effective on April 24, 1996, and prisoners whose state convictions already had become final were required to file any petitions for habeas corpus relief within one year of that date. *See Isham v. Randle*, 226 F.3d 691, 693 (6th Cir. 2000), *cert. denied*, 531 U.S. 1201 (2001). Represented by the Ohio Public Defender's Office, Griffin filed for habeas corpus relief on April 22, 1997. The petition was assigned to Judge Holschuh. Although in her initial petition Griffin raised just one ground for relief, namely the trial court's failure to follow "mandatory statutory requirements of a proceeding" in violation of her due process and equal protection rights, J.A. at 16, in her reply to the warden's return of writ she expanded her claims. Griffin argued that her waiver of trial by jury or by a three-judge panel, as provided under Ohio law, was neither knowing nor intelligent and that her sentence exceeded that permitted under law. The district court determined that these were "clearly distinct from the argument that she presented to the state courts," noted that the new arguments "appear to have been procedurally defaulted," and offered Griffin the opportunity to demonstrate cause and prejudice before the court would dismiss the claims as procedurally defaulted. J.A. at 66-68 (Dist. Ct. Order 3/16/98). Griffin argued that the cause of her failure to present the arguments in state court was her counsel's ineffective assistance.

Judge Holschuh ruled that, although ineffective assistance of appellate counsel can constitute cause for procedural default, the petitioner must present the ineffective assistance claim itself to the state courts before using it to excuse the default. Because Griffin had not brought that claim to the

state courts, she could not yet present it to the federal court in a habeas petition. Judge Holschuh concluded, "If she wishes, at some point, to make such an [ineffective assistance] argument here, petitioner must present her claim of ineffective assistance of counsel to the state courts." J.A. at 99 (Dist. Ct. Order 9/30/98). On September 30, 1998, the court denied her petition and dismissed the case without prejudice for her failure "to establish cause for her procedural default." J.A. at 101.

After this dismissal, Griffin filed an Application to Reopen in state court pursuant to Ohio Rule of Appellate Procedure 26(B) so that she could press the ineffective assistance claim. The date on which she filed for this post-conviction relief is not in the record. The Supreme Court of Ohio ultimately dismissed her case without opinion on September 22, 1999.

Griffin then returned to Judge Holschuh, filing on October 15, 1999, a habeas petition under her previous case number. In her re-filing, she alerted the court to the fact that she was filing it "under the original case number," because it merely continued her previous attack. She also noted that, because her previous filing had been dismissed without prejudice to permit exhaustion, this subsequent filing was not a "second or successive" petition prohibited under 28 U.S.C. § 2244(b). J.A. at 102-03. In this petition, Griffin also included notice of the claims that she had brought in her state Application to Reopen. However, on Friday, October 22, Judge Holschuh ordered the clerk to strike Griffin's new filing under the previous case number and directed the clerk to file it with a new case number and assign it to a judge using the "ordinary selection process." J.A. at 118 (Dist. Ct. Order 10/22/99). Judge Holschuh noted that because the previous case had closed and the petitioner had offered no grounds to reopen the previous case, the petition should be filed under a different case number, and the district judge to which it would then be assigned should consider independently whether to entertain the petition or reject it as a second or successive petition. Judge Holschuh stated that "[t]he assignment or non-assignment of a new civil number to a case is obviously

dismissed her appeal. The period during which her state application was pending would not count against any statute of limitations, because Rule 26(B) applications are part of the direct review process, during which the statute of limitations does not run. *See Bronaugh v. Ohio*, 235 F.3d 280, 286 (6th Cir. 2000) (applying 28 U.S.C. § 2244(d)(1)(A) to toll the running of the statute of limitations while a Rule 26(B) application is pending).

**4.    September 22, 1999 — October 15, 1999 or October 25, 1999**

The fourth relevant period is the period from September 22, 1999, when the Ohio Supreme Court dismissed her Rule 26(B) appeal, to the date on which Griffin re-filed her petition. This re-filing occurred either on October 15, when she first submitted the habeas petition and notice of exhaustion of state remedies under the old case number to Judge Holschuh, or October 25, when, after Judge Holschuh struck it, the petition was re-submitted, given a new case number, and assigned to Judge Smith. The parties disagree over which is the relevant date; the determination is significant because October 15 would be within *Palmer*'s thirty days after state court dismissal, but October 25 would be outside *Palmer*'s thirty days.

We conclude that Griffin returned to federal court in a timely manner. First, we note that Griffin actually returned to federal court on October 15. Although she re-filed her petition and its notice of exhaustion on October 25, one business day after Judge Holschuh struck the petition as filed under the wrong case number, nothing in Judge Holschuh's October 22 order dismissing the petition as filed under the wrong case number indicates that she was required to re-file her petition. His order directs specifically the Clerk, not the petitioner, to re-file the petition under a new case number. Judge Holschuh's order of October 22 treats the order to strike as an administrative adjustment with no substantive consequences. When Judge Holschuh explicitly directed the Clerk to re-file the petition, the Clerk should have re-filed the

court within thirty days of dismissal from state court. Accordingly, Griffin ought not be penalized for the fact that neither she nor the district court moved for the State to provide the state court material relevant to her burden. And although the State here failed to comply with Rule 5's requirement that it submit "a copy of the petitioner's brief on appeal [of any state conviction or post-conviction judgment] and of the opinion of the appellate court," we cannot presume that those materials would demonstrate when Griffin filed her petition.

Faced with this situation, in which no party could have anticipated the importance of this evidence, we are hesitant to say that either party failed to meet its burden. It is for this reason that we ultimately remand for resolution of this issue rather than simply affirm, as the State urges, or reverse and remand for proceedings on the petition's merits, as Griffin urges. It is worth noting the unique nature of the burden of equitable tolling in the habeas context. Unlike other areas of law in which the party claiming the benefits of equitable tolling must provide all of the evidence relevant to that showing, habeas is governed by rules that explicitly recognize the State's superior access to the record and explicitly require that the State provide certain elements of the evidence that are relevant to an equitable tolling inquiry. We remand here because Griffin's failure to meet her burden with regard to equitable tolling may be a direct consequence of the retroactive application of *Palmer* and the State's failure to provide materials required under the Rules Governing § 2254 cases.

First, however, we continue through the remaining relevant periods.

### 3.  Filing of State Application to Reopen — September 22, 1999

The third relevant period is the period from the date on which Griffin filed in the Ohio Court of Appeals her Application to Reopen pursuant to Rule 26(B) to September 22, 1999, when the Ohio Supreme Court finally

not conclusive on the issue of whether the petitioner is entitled to file a second habeas corpus petition," and "[n]othing in this order is intended to convey any opinion as to whether the new petition is or is not a successive petition or has otherwise been properly filed." J.A. at 117-18.

Griffin re-filed her second petition on Monday, October 25, and it was given a new case number and assigned to Judge Smith. After briefing, Judge Smith dismissed the action for failure to file within the one-year limitation period for § 2254 actions. The district court noted that when Griffin filed her first habeas petition on April 22, 1997, two days before the one-year deadline was to have run, 363 days of her statute of limitations had lapsed. That petition had been dismissed on September 30, 1998. Without knowing the actual date of her state court filing, the district court assumed that Griffin immediately filed her state court application and that this filing tolled the running of her federal statute of limitations. The district court ruled that when the state court application was resolved on September 22, 1999, Griffin had two days in which to return to federal court. She did not submit her second petition until October 15, 1999, after the statute of limitations had run. Therefore, the district court dismissed Griffin's petition.

Griffin timely appealed, and we have jurisdiction under 28 U.S.C. § 1291.

## II.  ANALYSIS

We review a district court's disposition of a habeas corpus petition de novo. *See Harris v. Stovall*, 212 F.3d 940, 942 (6th Cir. 2000), *cert. denied*, 532 U.S. 947 (2001).

### A.  AEDPA

Because Griffin's habeas petition was filed after AEDPA became effective on April 24, 1996, the provisions of that act apply to this case. AEDPA states that "[a] 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a

State court." 28 U.S.C. § 2244(d)(1). The statute of limitations begins to run from the latest of four circumstances, which in this case is April 24, 1996, the date on which AEDPA became effective. Although Griffin filed her initial petition on April 22, 1997, with two days remaining in her one-year statute of limitations, her subsequent filings were well after the statutory deadline. The question is during which of those subsequent filings, if any, the statute of limitations was tolled, and whether her final filing in October of 1999 was untimely. We take each relevant period in turn.

## B. Relevant Periods

### 1. April 22, 1997 — September 30, 1998

The first relevant period is the period from April 22, 1997, when Griffin filed her initial petition with Judge Holschuh, to September 30, 1998, when Judge Holschuh dismissed the petition without prejudice. The Supreme Court's decision in *Duncan v. Walker*, 533 U.S. 167 (2001), makes clear that the federal habeas statutes do not toll the statute of limitations while the federal habeas petition is pending. Section 2244(d)(2) provides for the statute of limitations to be tolled for "[t]he time during which a properly filed application for State post-conviction or other collateral review" is pending. 28 U.S.C. § 2244(d)(2). In *Duncan*, the Supreme Court held that this provides for tolling only during the pendency of *state* proceedings, not *federal* proceedings. *Duncan*, 533 U.S. at 180. Accordingly, statutory tolling for Griffin's petition expired on April 24, 1997, while her habeas petition was pending.

*Duncan* does not foreclose the possibility of equitable tolling. Concurring in *Duncan*, Justice Stevens suggested that, although statutory tolling is not available during federal proceedings, there are two other ways in which a petitioner whose statute of limitations has run during the pendency of the petitioner's federal petition might obtain relief. *See id.* at 182-83 (Stevens, J., concurring). First, Justice Stevens wrote that district courts could simply hold proceedings in abeyance while the petitioner returned to state court. When a petition

*See* Rule 5 of the Rules Governing § 2254 Cases. Rule 5 provides that the court may order the State to provide additional transcripts from the state court record upon the court's own motion or upon the motion of the petitioner. *See id.* When this information is required, it is the State's responsibility to provide it. *See, e.g.*, *Bundy v. Wainwright*, 808 F.2d 1410, 1414 n.5, 1415 (11th Cir. 1987) (chastising State for not supplying those aspects of the record on which it relied in its defense to the writ and stating that "[t]he obligation to come forward with the state court record is squarely upon the respondent, not upon the petitioner"). Thus in ordinary circumstances, the information necessary to satisfy Griffin's burden of demonstrating that she is entitled to equitable tolling, that is, the date on which she filed her Rule 26(B) Application to Reopen in state court, might very well have been supplied either in the documents pertaining to her appeal in the Rule 26(B) proceedings, which the State was required to attach to its answer, or in documents from the record that the court on its own motion or on the petitioner's motion might have ordered the State to provide.

Like many cases that were decided in the district courts prior to our decision in *Palmer* but are being decided on appeal following our decision in *Palmer*, this case does not present ordinary circumstances. Because *Palmer* introduces a new period of mandatory equitable tolling for petitioners who filed their federal habeas petitions within the statute of limitations but were forced to return to state court to exhaust certain claims, *Palmer* requires a procedure that will not always be easy to impose post hoc. Neither the district court, Griffin, nor the State could have foreseen that *Palmer* would raise the question of whether a petitioner returned to state

---

narrative summary of the evidence may be submitted. If the petitioner appealed from the judgment of conviction or from an adverse judgment or order in a post-conviction proceeding, a copy of the petitioner's brief on appeal and of the opinion of the appellate court, if any, shall also be filed by the respondent with the answer.

Rule 5 of the Rules Governing § 2254 Cases.

demonstrated that statute has run); *Johnson-Brown v. Wayne State Univ.*, No. 98-1001, 1999 WL 191322, at *2 (6th Cir. Mar. 17, 1999) (unpublished) (placing, in Title VII context, the burden on the plaintiff to show that she is entitled to equitable tolling). As *Palmer* makes clear, a petitioner in Griffin's situation is entitled to equitable tolling provided that the petitioner filed in state court within thirty days of the federal court dismissal and returned to federal court no later than thirty days following state court exhaustion. *See Palmer*, 276 F.3d 777, 781.

However, the Rules Governing § 2254 Cases recognize that the state is much better able to access the state court record. *See* Rule 5 of the Rules Governing § 2254 Cases, Advisory Committee Notes (1976) ("The attorney general has both the legal expertise and access to the record and thus is in a much better position to inform the court on the matter of exhaustion of state remedies."). Rule 5 indicates that the state must attach to its answer copies of the petitioner's appellate briefs and the appellate decisions from the state court proceedings, must attach portions of state court transcripts that it deems relevant, and must provide additional transcripts or narrative summaries of state court proceedings upon the court's order.[2]

---

[2]Rule 5 of the Rules Governing § 2254 cases reads, in its entirety, as follows:

The answer shall respond to the allegations of the petition. In addition it shall state whether the petitioner has exhausted his state remedies including any post-conviction remedies available to him under the statutes or procedural rules of the state and including also his right of appeal both from the judgment of conviction and from any adverse judgment or order in the post-conviction proceeding. The answer shall indicate what transcripts (of pretrial, trial, sentencing, and post-conviction proceedings) are available, when they can be furnished, and also what proceedings have been recorded and not transcribed. There shall be attached to the answer such portions of the transcripts as the answering party deems relevant. The court on its own motion or upon request of the petitioner may order that further portions of the existing transcripts be furnished or that certain portions of the non-transcribed proceedings be transcribed and furnished. If a transcript is neither available nor procurable, a

contains an unexhausted claim, Justice Stevens wrote, "there is no reason why a district court should not retain jurisdiction over a meritorious claim and stay further proceedings pending the complete exhaustion of state remedies." *Id.* Second, Justice Stevens indicated that although statutory tolling was not available, equitable tolling remained an option. "[A] federal court might very well conclude that tolling is appropriate based on the reasonable belief that Congress could not have intended to bar federal habeas review for petitioners who invoke the court's jurisdiction within the 1-year interval prescribed by AEDPA." *Id.* at 183.

This court has endorsed Justice Stevens's concurrence. In *Palmer v. Carlton*, 276 F.3d 777 (6th Cir. 2002), we ruled that a petitioner whose original petition was filed within the one-year statute of limitations, but whose petition, after the statute of limitations had expired, was voluntarily dismissed without prejudice to allow exhaustion of state remedies, could return to federal court following exhaustion provided that the petitioner filed for state court relief and returned to federal court within "a brief, reasonable time limit." *See id.* at 781. We suggested that the petitioner should file in state court within a time period of "'normally 30 days'" after the federal dismissal and should return to federal court within "'30 days'" of exhaustion. *See id.* at 781 (quoting and relying on *Zarvela v. Artuz*, 254 F.3d 374, 381 (2d Cir.), *cert. denied*, ___ U.S. ___, 122 S. Ct. 506 (2001)); *see also Gibson v. Klinger*, 232 F.3d 799, 808 (10th Cir. 2000) (suggesting that equitable tolling should be available "when a prisoner actively pursues judicial remedies but files a defective pleading during the statutory period"). The petitioner in *Palmer* had neither conformed to the "normal" thirty-day period for returning to federal court nor explained his delay, so this court affirmed the district court's dismissal. *See Palmer*, 276 F.3d at 782.

Under this analysis, first adopted in *Palmer* and subsequently applied in *Hargrove v. Brigano*, ___ F.3d ___, No. 01-3095, 2002 WL 1842218 (6th Cir. Aug. 14, 2002), we must determine whether the petitioner is entitled to equitable tolling of the statute of limitations following dismissal to

permit exhaustion by examining the petitioner's subsequent diligence in exhausting state remedies and returning to federal court. As in *Palmer*, 276 F.3d at 779, and *Hargrove*, 2002 WL 1842218, at *1, we are faced with a petitioner whose petition was dismissed without prejudice for failure to exhaust state remedies. As in *Palmer* and *Hargrove*, we are reviewing a district court's disposition of such a case prior to our clarification that ordinarily, a district court should stay such unexhausted claims pending exhaustion rather than dismiss them without prejudice for that same purpose. Whether the district court dismissed the petition for failure to exhaust, with an explicit (as in this case and *Hargrove*, 2002 WL 1842218, at *1) or implicit (as in *Palmer*, 276 F.3d at 781) instruction to exhaust the claims in state court before returning, or stayed the proceedings pending exhaustion, the consequences for Griffin should be the same.[1] Accordingly, we turn to Griffin's timeliness in returning to state court and then back to federal court to determine whether she met the requirements of *Palmer*.

### 2.    September 30, 1998 — Filing of State Application to Reopen

The second relevant period is the period from September 30, 1998, when Judge Holschuh dismissed the first petition, to the date on which Griffin filed in the Ohio Court of Appeals her Application to Reopen pursuant to Ohio Rule of Appellate Procedure 26(B). The record before us does not indicate when Griffin filed her Application to Reopen, so the question of which party bears the relevant burden is important. If the burden lies on Griffin, in the absence of any evidence we must presume that she did not file her application within the thirty days required under *Palmer*. If

---

[1]Of the two options that Justice Stevens suggested in his *Duncan* concurrence, it is preferable for district courts to stay proceedings pending exhaustion. *See Hargrove*, 2002 WL 1842218, at *2. We also note that district courts that dismiss claims pending exhaustion should dismiss only the unexhausted claims and should retain jurisdiction over any exhausted claims. *See Hill v. Anderson*, 300 F.3d 679, 683 (6th Cir. 2002).

the burden lies on the State, we must presume that she filed her state application immediately upon the dismissal of her federal claim.

More than one burden is relevant in determining whether the petitioner has complied with the statute of limitations. As in other contexts involving equitable tolling, the party asserting statute of limitations as an affirmative defense has the burden of demonstrating that the statute has run. *Cf. Campbell v. Grand Trunk W. R.R. Co.*, 238 F.3d 772, 775 (6th Cir. 2001) (noting that in the FELA context, the burden is first "on the defendant to show that the statute of limitations has run"). In many areas of law, this will require the party asserting the defense to introduce substantial evidence, to demonstrate, for example, that as of a certain date the plaintiff knew or should have known that the cause of action had accrued. *See, e.g.*, *FDIC v. Alexander*, 78 F.3d 1103, 1107 (6th Cir. 1996) (applying Ohio law and looking to whether evidence showed that plaintiff had constructive knowledge of accrual). In the habeas context, the party asserting that the statute has run will usually be able to meet this burden by pointing to materials already before the district court, namely, by pointing out that the petition itself was filed after the statute had run. The State in this case has met this burden.

The next relevant burden is the burden of demonstrating an entitlement to equitable tolling. As we have suggested but have not until now made explicit in the habeas context, the petitioner bears the ultimate burden of persuading the court that he or she is entitled to equitable tolling. *See Dunlap v. United States*, 250 F.3d 1001, 1003 (6th Cir. 2001); *see also, e.g.*, *Smith v. Duncan*, 297 F.3d 809, 814 (9th Cir. 2002) ("Once Smith was notified that his petition was subject to dismissal based on AEDPA's statute of limitations and the record indicated that Smith's petition fell outside the one-year time period, Smith had the burden of demonstrating that the limitation period was sufficiently tolled."). *Cf. Campbell*, 238 F.3d at 775 (requiring, in FELA context, that plaintiff show entitlement to equitable tolling once defendant has