**Grant W. LAMBERT, Petitioner–Appellant,**

v.

**WARDEN, ROSS CORRECTIONAL, Respondent–Appellee.**

No. 01–3422.

United States Court of Appeals, Sixth Circuit.

Sept. 2, 2003.

Beth G. Lewis, Office of the Federal Public Defender, Dayton, OH, for Petitioner–Appellant.

Diane Mallory, Office of the Attorney General Corrections Litigation Section, Columbus, OH, for Respondent–Appellee.

Before: BOGGS and COLE, Circuit Judges; and BELL, Chief District Judge.\*

BOGGS, Circuit Judge.

Petitioner Grant W. Lambert appeals the district court's dismissal of his petition for a writ of habeas corpus as untimely under the one-year statute of limitations of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2244(d). Lambert was convicted in an Ohio state trial court, appealed to the Ohio intermediate courts, allowed the time for an appeal to the Ohio Supreme Court to lapse, and filed his federal petition for a writ of habeas corpus more than eighteen months later. The district court considering that petition concluded that the Ohio App. R. 26(B) Application to Reopen that Lambert filed in the interim did not delay the start of the statute of limitation under § 2244(d)(1)(A), but merely tolled its run-

---

\* The Honorable Robert Holmes Bell, Chief United States District Judge for the Western District of Michigan, sitting by designation.

ning under § 2244(d)(2), and that the ninety days allowed to petition for United States Supreme Court review of the denial of the 26(B) application were not part of the tolling period under § 2244(d)(2). The allowed tolling period being insufficient to reduce the total time lapsed to one year or less, the district court dismissed the petition. Precedent compels us to reverse and remand.

## I

On April 1, 1997, Lambert was indicted by a grand jury on one count of retaliation, in violation of Ohio R.C. 2921.05(B). He was sentenced to a term of four years of incarceration and the Ohio intermediate appellate courts denied Lambert's timely appeal. On July 21, 1998, forty-five days after the intermediate appellate judgment, Lambert's time for an appeal to the Ohio Supreme Court ended. On September 17, Lambert filed *pro se* an Application to Reopen under Ohio App. R. 26(B) with the Ohio appellate courts on the basis that his original appellate counsel was ineffective. Lambert's 26(B) application was filed 104 days after the appellate judgment. On November 16, the Ohio appellate courts denied the 26(B) application both on procedural and on substantive grounds, but without commenting on the delay. On December 28, Lambert filed *pro se* an appeal of the denial of his 26(B) application to the Ohio Supreme Court. On February 17, 1999 the Ohio Supreme Court chose not to exercise jurisdiction, rejecting the appeal. Lambert did not seek a writ of certiorari to challenge this rejection in the United States Supreme Court.

On January 25, 2000, Lambert signed and submitted a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254. The United States District Court for the Southern District of Ohio received the petition only on February 9, 2000, but consid-

ered the date of submission to be the filing date. *See Houston v. Lack*, 487 U.S. 266, 270–72, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988); *Towns v. United States*, 190 F.3d 468, 469 (6th Cir.1999). On May 15, the respondent sought to dismiss the petition as untimely under AEDPA. In response, Lambert asserted that the statute of limitation started only after the Ohio Supreme Court rejected his 26(B) application. Lambert asserted that his 26(B) application *restarted* the statute of limitation and that the statute did not run during the time he could have filed for a petition for a writ of certiorari in the United States Supreme Court challenging the Ohio Supreme Court's denial of his appeal of the Ohio appellate court's denial of his 26(B) application. On March 19, 2001, the district court, disagreeing, dismissed the petition as untimely. Before this court now is Lambert's timely appeal of that dismissal.

## II

The timeliness of this petition is a question of the proper application of the AEDPA statute of limitations and its tolling provision.

A 1–year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the ... date on which the judgment became final by the *conclusion of direct review* or the expiration of the time for seeking such review.

28 U.S.C. § 2244(d)(1)(A) (emphasis added).

The time during which a properly filed application for *State post-conviction or other collateral review* with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(2) (emphasis added). The distinction between direct and collateral review is significant in the application of the AEDPA time limit. Direct review delays the start of the statute of limitations. Collateral review merely tolls its running. Direct review is not subject to a "properly-filed" requirement. Collateral review is. On direct review, the time for filing of petitions of certiorari and proceedings in the United States Supreme Court do not count towards the limitation period. On collateral review, they do. *See Abela v. Martin*, 309 F.3d 338, 345–48 (6th Cir. 2002), *vacated by* 318 F.3d 1155 (6th Cir. 2003) (granting rehearing *en banc* to reconsider this issue); *see also Coates v. Byrd*, 211 F.3d 1225, 1227 (11th Cir.2000); *Rhine v. Boone*, 182 F.3d 1153, 1155 (10th Cir.1999); *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir.1999). Therefore the proper classification of 26(B) proceedings as part of direct or collateral review is crucial.

The key case for Ohio procedure on claims of ineffective assistance of appellate counsel is *State v. Murnahan*, 63 Ohio St.3d 60, 584 N.E.2d 1204 (Ohio 1992). Murnahan had been convicted of and sentenced for involuntary manslaughter and aggravated vehicular homicide in Ohio trial court. *Id.* at 1205–06. On direct appeal, Murnahan's counsel submitted an *Anders* brief and was permitted to withdraw. *Id.* at 1206. After giving Murnahan an opportunity to submit a *pro se* brief, the Ohio Court of Appeals rejected his appeal. *Ibid.* Ohio permits motions for post-conviction relief under certain grounds to be filed in state trial courts. Ohio R.C. 2953.21. Murnahan filed such a motion, claiming that his appellate counsel had been constitutionally ineffective, but the trial court held that such claims were not cognizable under Ohio R.C. 2953.21. *Ibid.* The appellate court reversed that holding but, rather than remanding, certified the issue to the Ohio Supreme Court.

*Ibid.* Because allowing a inferior trial court to rule on the adequacy of a proceeding in a superior appellate court would be incompatible with the hierarchical structure of the state court system, the Ohio Supreme Court "h[e]ld that claims of ineffective assistance of appellate counsel are not cognizable in post-conviction proceedings *pursuant to R.C. 2953.21.*" *Id.* at 1208 (emphasis added). Nevertheless, a defendant with a claim of ineffective assistance of appellate counsel was not left without a remedy, "since these issues could have been raised in an application for reconsideration in the court of appeals or a direct appeal to [the Ohio Supreme Court]." *Id.* at 1208–09. The suggested procedure for raising such claims in the Ohio appellate courts was the then-extant version of Rule 26. *Id.* at 1209 n. 3. While that version of Rule 26 seemed to allow only for reconsideration "of any cause or motion submitted on appeal," the Ohio Supreme Court decided to "construe claims of ineffective assistance of appellate counsel to be tantamount to constitutional claims that should have been presented on appeal," and therefore within the scope of the rule. *Ibid.* Furthermore. "[s]ince claims of ineffective assistance of appellate counsel may be left undiscovered due to the inadequacy of appellate counsel or the inability of the defendant to identify such errors within the time allotted for reconsideration," the claims could be raised under Rule 26 even after an indefinite delay, as long as circumstances would make application of the doctrine of *res judicata* unjust. *Id.* at 1209. Not anticipating that in two years AEDPA might make the distinction crucial, the Ohio Supreme Court failed to state explicitly whether such Ohio Rule 26 proceedings were to be considered part of the direct appeal or part of the post-conviction proceedings.

The *Murnahan* court did recognize the incongruity between Rule 26 and claims of ineffective assistance of appellate counsel and therefore recommended that the rule be amended. 584 N.E.2d at 1209 n. 6. This recommendation was acted upon in 1993, adding a new sub-section 26(B) to provide for review in the state appellate courts of such claims:

A defendant in a criminal case may apply for reopening of the appeal from the judgment of conviction and sentence, based on a claim of ineffective assistance of appellate counsel. An application for reopening shall be filed in the court of appeals where the appeal was decided within ninety days from journalization of the appellate judgment unless the applicant shows good cause for filing at a later time.

Ohio App. R. 26(B)(1). However, the new Rule 26(B) also was silent on whether such proceedings were to be considered part of direct or collateral review.

We answered the question of whether Rule 26(B) proceedings were part of direct or collateral review in *White v. Schotten*, 201 F.3d 743 (6th Cir.2000). In 1989, White had been convicted of aggravated murder and two counts of felonious assault in Ohio trial court. *Id.* at 748. In 1991, the Ohio appellate courts upheld the murder conviction. *Ibid.* That same year, White's case was assigned to the Office of the Ohio Public Defender. *Ibid.* While there was a colorable claim of ineffective assistance of appellate counsel, White's counsel only filed a 26(B) application in the Ohio appellate courts in 1994, almost three years after the ninety-day time limit for such filings expired. *Ibid.* The Ohio appellate courts did not find the proffered excuse of excessive workload in the Office of

the Ohio Public Defender to be good cause for failure to meet the deadline and therefore dismissed White's application without reaching the merits. *Ibid.* The Ohio Supreme Court affirmed, *State v. White*, 72 Ohio St.3d 91, 647 N.E.2d 787 (Ohio 1995), and the United States Supreme Court denied a petition for certiorari, *White v. Ohio*, 516 U.S. 892, 116 S.Ct. 242, 133 L.Ed.2d 168 (1995) (mem.). Subsequently White filed a federal habeas corpus petition alleging *inter alia* that his original appellate counsel had been constitutionally ineffective.[1] *White*, 201 F.3d at 748–49. The district court denied this claim because the Ohio Public Defender, by failing to file a timely 26(B) application, had procedurally defaulted that claim.

We reversed and remanded. *White*, 201 F.3d at 754. We first noted that "an attorney's failure or refusal to abide by established time deadlines in handling a client's appeal is conduct falling below the minimal standards of competency that federal case law has imposed upon counsel to satisfy constitutional safeguards." *Id.* at 752 (citing *Strickland v. Washington*, 466 U.S. 668, 698, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and *Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir.1998)). While the Ohio Public Defender indisputably and grossly failed to abide the ninety-day deadline for 26(B) applications and therefore rendered ineffective assistance of counsel, this conclusion alone does not establish a constitutional violation because a defendant only has a constitutional right to *effective* assistance of counsel when there is a constitutional right to assistance of counsel *simpliciter*. As there is a such a constitutional right only on direct and not on collateral review, the resolution of case depended on this classification of 26(B)

---

1. White's earlier federal habeas corpus petition had been dismissed for failure to exhaust the ineffective assistance of appellate counsel

claim in Ohio state courts. *White v. Tate*, 19 F.3d 1435, 1994 WL 91848 (6th Cir.1994) (table).

applications. *Ibid.* (citing *Pennsylvania v. Finley*, 481 U.S. 551, 555, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987)). We noted that challenges to the constitutional effectiveness of appellate counsel cannot be brought in Ohio habeas proceedings. *Ibid.* (citing *Manning v. Alexander*, 912 F.2d 878, 882 (6th Cir.1990)). Then we concluded that such challenges cannot be brought in any Ohio post-conviction proceedings. *Ibid.* (citing *Murnahan*, 584 N.E.2d at 1208) (holding "that claims of ineffective assistance of appellate counsel are not cognizable in post-conviction proceedings *pursuant to R.C. 2953.21.*" (emphasis added)). If 26(B) proceedings were not part of the Ohio habeas or other post-conviction review, we reasoned, they must be part of direct review. *Ibid.* If they were part of direct review, White had a constitutional right to effective assistance of counsel. *Id.* at 752–53. As he had been denied such assistance, we remanded for consideration of the merits of his claims. *Id.* at 754. The United States Supreme Court denied certiorari. *Bagley v. White*, 531 U.S. 940, 121 S.Ct. 332, 148 L.Ed.2d 267 (2000) (mem.).

In Ohio courts, the response to *White* was unanimously hostile. In every single instance that the issue was raised, the Ohio appellate courts have refused to follow the holding of *White*. *State v. Creasey*, 2001 WL 1167121, at *1 (Ohio Ct.App. 2001) (holding that, notwithstanding *White*, Ohio defendants have no constitutional right to assistance of counsel in 26(B) applications); *State v. Marcum*, 2002 WL 42894, at *3 (Ohio Ct.App.2002) (same); *State v. Darrington*, 2000 WL 1655236, at *2 (Ohio Ct.App.2000) (holding that, notwithstanding *White*, 26(B) applications are post-conviction proceedings); *State v. Bragg*, 2001 WL 1671424, at *1 (Ohio Ct. App.2001) (same); *State v. Walker*, 2001 WL 1167158, at *2 (Ohio Ct.App.2001) (same); *State v. Dozier*, 2002 WL 42964, at *2 (Ohio Ct.App.2002) (same); *State v. Collins*, 2002 WL 77117, at *1 (agreeing "with the courts that have held there is no right to counsel in an App. R. 26(B) application to reopen because the application is in the nature of postconviction relief rather than a continuation of the direct appeal process," notwithstanding *White* ). The Ohio Supreme Court when faced with the *White* holding declined to state its opinion on the issue. But while the Ohio Supreme Court has not spoken to the *White* issue in its opinions, in its practice rules it implies that 26(B) applications are postconviction matters. Ohio Supreme Court Practice Rule II, § 2(A)(4)(b) (2003) ("The provision for delayed appeal applies to appeals on the merits and does not apply to *appeals involving postconviction relief, including appeals brought pursuant to [Murnahan] and App. R. 26(B).*" (emphasis added)).

Federal courts in this circuit of course do not enjoy the privilege of ignoring binding circuit precedent. Nevertheless, federal courts' confusion as to classification of *Murnahan*/26(B) proceedings as post-conviction relief continued unabated after our decision in *White*. *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir.1994) (interpreting *Murnahan* to hold that "claims of ineffective assistance of appellate counsel are not cognizable in post-conviction proceedings (*at the trial court level )*" (emphasis added)); *Scott v. Mitchell*, 209 F.3d 854, 862 (6th Cir.2000) (referring to *Murnahan* proceedings as *post-conviction* relief in a decision three months after *White* ), *rev'g Scott v. Anderson*, 58 F.Supp.2d 767, 773 (N.D.Ohio 1998) (also referring to *Murnahan* proceedings as post-conviction relief); *Martin v. Mitchell*, 280 F.3d 594, 604 (6th Cir.2002) (referring to a *Murnahan* proceeding as a "post-conviction application for delayed reconsideration"); *Jamison v. Collins*, 100 F.Supp.2d 647, 668 (S.D.Ohio 2000) (referring to *Murnahan* proceedings

as application for post-conviction relief); *Jackson v. Anderson,* 141 F.Supp.2d 811, 881 (N.D.Ohio 2001) (referring to *Murnahan* proceedings as collateral review of the conviction). Eight months after our decision in *White,* we issued a published opinion exclusively devoted to clarifying the effects of 26(B) applications on the AEDPA statute of limitations. *Isham v. Randle,* 226 F.3d 691 (6th Cir.2000). Throughout, and without citing *White,* we treated 26(B) applications as collateral attacks, under 28 U.S.C. § 2244(d)(2), rather than as part of direct review, under 28 U.S.C. § 2244(d)(1)(A). We concluded that the time for filing of a petition of certiorari to review the Ohio Supreme Court's denial of a 26(B) application was not part of "State post-conviction or other collateral review" and therefore concluded that it did not toll the AEDPA statute of limitations under § 2244(d)(2). If, as *White* held, 26(B) applications are part of direct review, this analysis and conclusion were incorrect.

We first attempted to come to terms with these contradictions in *Bronaugh v. Ohio,* 235 F.3d 280 (6th Cir.2000). There we reasoned as follows:

> We follow the *White* court's express holding that Rule 26(B) applications to reopen direct appeal are part of the direct appeal process. *See* [*White,* 201 F.3d at 753]. Given the clear statement in *White* that 26(B) applications are part of direct review, a discussion of whether an untimely Rule 26(B) application is a "properly filed" application for post-conviction relief is unnecessary. Instead, because § 2244(d)(1)(A) states that the one-year period of limitations will not run until the "conclusion of direct review[,]" and because we have held in *White* that Rule 26(B) applications are part of direct review, the statute of limitations should not run during the time in which Bronaugh's Rule 26(B) application was pending in the Ohio courts.

*Id.* at 286 (footnote omitted). Up to this point, the analysis is a faithful application of the holding of *White.* However, what follows is a non-sequitur:

> It is important to note that Bronaugh will not be able to benefit from his delay in bringing a Rule 26(B) application to reopen direct appeal by requesting that § 2244(d)(1)(A)'s one-year statute of limitations not begin until after his Rule 26(B) application has run its course through the courts. Instead, the statute of limitations is tolled only for that period of time in which the Rule 26(B) application is actually pending in the Ohio courts.

*Id.* at 286 (footnote omitted). After reasoning that a 26(B) application is part of direct review and therefore has to be treated under § 2244(d)(1)(A) and hence not subject to the properly-filed requirement of § 2244(d)(2), the opinion proceeds directly to apply § 2244(d)(2) tolling to this 26(B) application, rather than as delaying the start of the limitations period, as appropriate under § 2244(d)(1)(A). No reason is given for this sudden change, nor is any attempt made to reconcile this conclusion with *White.*

The footnotes do not resolve this contradiction. There we merely found necessary to remark that every panel is bound by published decisions of previous panels under 6th Cir. R. 206 and that, therefore, *Morgan v. Money,* 2000 WL 178421 (6th Cir.2000), *Scott,* and *Isham* were not binding as far as they contradict *White. Id.* at 286 n. 9. We also "assume[d], without deciding, that Bronaugh cannot toll § 2244(d)(1)(A)'s statute of limitations for an additional ninety days in which to file a petition for a writ of certiorari in the United States Supreme Court following the Ohio Supreme Court's denial of his Rule 26(B) application." *Id.* at 286 n. 10. This

assumption is in direct contradiction with the holding of *Bronaugh* that "the one-year statute of limitations does not begin to run until the time for filing a petition for a writ of certiorari for *direct review* in the United States Supreme Court has expired." (emphasis added) *Id.* at 283 (citing *Isham*, 226 F.3d at 694–95); *see also Clay v. United States*, 537 U.S. 522, 123 S.Ct. 1072, 1079, 155 L.Ed.2d 88 (2003) (holding "that, for federal criminal defendants who do not file a petition for certiorari with this Court on direct review, § 2255's one-year limitation period starts to run when the time for seeking such review expires"). If 26(B) applications are part of direct review and the AEDPA statute of limitation does not run while a petition for certiorari of direct review may be filed, it is unclear why the court would assume that the statute did run while a petition for certiorari of a 26(B) application could have been filed, but was not filed. *See Griffin v. Rogers*, 308 F.3d 647, 655 (6th Cir.2002) (making the same argument and, after citing *White, Isham,* and *Bronaugh,* concluding, contrary to the assumption of *Bronaugh,* that the ninety-day period does *not* count against the statute of limitation).

We next addressed this issue in *Searcy v. Carter,* 246 F.3d 515 (6th Cir.2001). Searcy had filed a motion for a delayed appeal with the Ohio Supreme Court after his AEDPA time limit for federal habeas review had expired. *Id.* at 516. When the Ohio Supreme Court denied his motion, Searcy filed a federal habeas petition, which the district court dismissed as untimely. *Id.* at 517. On appeal, Searcy argued that if Ohio delayed appeals are part of direct review, as the *White* court held with respect to 26(B) applications, then the district court erred in treating the application for delayed appeal as merely tolling the time limit under § 2244(d)(2), rather than as restarting it under

§ 2244(d)(1)(A). We rejected this argument:

> This is a position that we cannot endorse, because it would effectively eviscerate the AEDPA's statute of limitations. Leave to file a late notice of appeal can be sought at any time, even many years after conviction. If the one-year period of limitations did not begin to run until such an application for leave to appeal was denied, the one-year statute of limitations would be meaningless; merely by delaying his application for leave to file a late notice of appeal, a petitioner could indefinitely extend the time for seeking habeas relief. The statute of limitations provision of the AEDPA would thus be effectively eliminated, a clearly unacceptable result.

*Id.* at 519 (quoting *Raynor v. Dufrain,* 28 F.Supp.2d 896, 898 (S.D.N.Y.1998)). In order to lend precedential support to this prudential argument, we noted that "the term 'direct appeal' ... does not universally include delayed appeals." *Id.* at 519 (quoting *State v. Bird,* 138 Ohio App.3d 400, 741 N.E.2d 560, 563 (Ohio Ct.App. 2000)). *Searcy* proceeded to note that "[t]his court has recently made clear, however, that even a Rule 26(B) application, though part of the direct appeal process, will not delay the starting of the statute of limitations." *Id.* at 519–20 (citing *Bronaugh,* 235 F.3d at 285). However, while *Searcy* is binding precedent with respect to non–26(B) delayed appeals and authored by the same judge as *White,* it could no more overturn *White's* holding that 26(B) applications are part of direct review than could *Bronaugh.* Nor does it, any more than *Bronaugh,* offer any argument why, if 26(B) applications are part of direct review, they can be treated as collateral review under § 2244(d)(2) rather than under § 2244(d)(1)(A) as the clear statutory language commands for direct review.

Finally, we discussed this problem in *Miller v. Collins,* 305 F.3d 491, 493–95 (6th Cir.2002):

> In our view, there are two ways to read *Bronaugh.* The first, which is the State of Ohio's position in this case, is that a Rule 26(B) application is technically part of the direct review process, but in effect, it functions as a collateral attack because it only tolls the statute of limitations during pendency, it does not affect the conclusion of direct review and thus does not postpone the initial running of the one-year limitations period. The other possible interpretation is that because a Rule 26(B) application is part of the direct review process, a conviction does not become final pursuant to section 2244(d)(1)(A) until the Ohio courts dispose of a petitioner's Rule 26(B) application. Thus, a timely application does not merely toll the statute of limitations, the limitations period does not begin to run until its conclusion.

*Id.* at 494 (footnotes omitted). However, we side-stepped the resolution of the issue by noting that Miller's petition was, due to equitable tolling, timely under either interpretation of 26(B). *Id.* at 495.

### III

At this point it seems difficult to dispute that the holding of *White* that Ohio challenges to the effectiveness of appellate counsel are part of direct review led to confusion and conflict in later opinions of courts in this circuit. The Ohio Supreme Court decision that *White* relied upon for the holding challenges that such challenges are not post-conviction proceedings, *Murnahan,* did not make that broad holding. It merely held that these challenges cannot be brought in trial court *pursuant to*

R.C. 2953.21, but must be brought in appellate court *under Rule 26.*[2] The reasoning and holding of *Murnahan* exclusively concern to the question of the proper court in which to bring such challenges. Nothing in the *Murnahan* opinion indicated that the court gave any consideration to the question of whether such a challenge, once brought in the proper court, was to be considered part of direct or collateral review. However, the Ohio courts, the authoritative interpreters of Ohio procedure, are unanimous in considering 26(B) applications to be part of collateral review and have held so repeatedly before and after *White. See Hutchison v. Marshall,* 744 F.2d 44, 46 (6th Cir.1984) (stating it to be "axiomatic that state courts are the final authority on state law" and that "[s]tate statutes mean what state courts say they mean"). The Ohio Supreme Court's rules of practice agree. Both we and district courts within our jurisdiction have continued to so state after *White.* The fact that we decided *Bronaugh, Searcy,* and *Griffin* in direct contradiction to *White,* while verbally paying fealty to its holding, suggests that the authors of the later opinions shared our doubts regarding the correctness and practicality of *White.* So does the inability of the *Miller* court to resolve the issue.

Even if this question were a matter of first impression, in this or any other court, the structure and function of AEDPA suggest that 26(B) applications should be classified as collateral, rather than direct, review. Direct review immediately follows trial, generally is constrained by tight, non-waivable time limits, and concludes with finality of judgment. Collateral review focuses of the adequacy of the trial and direct review, rather than the underly-

---

**2.** It is also worth noting that *White's* reading of *Murnahan* results in the anomaly that we consider challenges to the effectiveness of tri-

al counsel to be part of collateral review, but later challenges to the effectiveness of appellate counsel to be part of direct review.

ing merits of the original action. As such it necessarily follows direct review. While some types of collateral review have time limits, these limits are generally looser and waivable for good cause. Also, while there is, with few exceptions, only one direct review process of a trial court verdict, there often can be multiple courses of collateral review.

The structure of the AEDPA statute of limitation meshes with this understanding of the distinction between direct and collateral review. AEDPA sets a short statute of limitations in order to limit the inflow of federal habeas appeals. Allowing that statute to be restarted at the convenience of the prisoner would defeat that purpose. Therefore the statute is started at an early and definitive date, the conclusion of direct review. 28 U.S.C. § 2244(d)(1)(A). This is the earliest practicable date for federal habeas review, because prior to the end of direct review state courts (and the United States Supreme Court) still may correct any constitutional violations, rendering federal habeas review unnecessary. As there is only one course of direct review, the use of the definitive article *the* to describe the date the statute begins to run is appropriate. Of course, allowing the statute of limitation to run out while the prisoner is still pursuing state post-conviction remedies combined with AEDPA's exhaustion requirement would be manifestly unjust. Therefore AEDPA tolls the statute of limitation during state post-conviction proceedings. 28 U.S.C. § 2244(d)(2). Again, the language of the provision agrees with the properties of collateral attacks. As collateral attacks follow direct review, and therefore the start of the limitations period, it makes sense to speak of tolling the

period. Recognizing that there can be multiple collateral attacks, the statute refers to tolling while *a* properly filed application is pending.

Under each of these criteria, 26(B) applications are more similar to collateral review than direct review. Such applications can, and given the time limits, usually will, occur after the conviction has become final. Such applications, while subject to a relatively short period to proceed as-of-right, can be successfully brought at any time, provided good cause is shown.[3] Finally, there is nothing to suggest that 26(B) applications cannot be brought successively, or that such successive petitions would necessarily be without merit, provided good cause is shown for not raising the allegations in a previous 26(B) application. Therefore 26(B) applications are best classified as parts of collateral review under AEDPA.

Failing to follow *White,* and thus holding that 26(B) applications are part of collateral review, would have few unfavorable collateral consequences. As *Isham* ignored *White* and treated 26(B) applications as part of collateral review, abrogating *White* would retroactively render *Isham* correct. As for *Bronaugh, Searcy,* and *Griffin,* which stated an acceptance of *White* but mostly disregarded its holding, these cases would become infirm in their reasoning, but their outcome would remain correct.

Nevertheless, in a panel decision good policy, judicial economy, and sound reason cannot trump binding precedent. A panel of this court cannot overrule the decision of another panel, however mistaken. *See Salmi v. Sec'y of Health and Human Services,* 774 F.2d 685, 689 (6th Cir.1985).

---

3. A holding that 26(B) applications are part of direct review if filed as of right, i.e., within ninety days of finality of appellate judgment, but part of collateral review if filed later, alleging good cause, would also resolve many of the practical difficulties raised here. However, it would still be contrary to *White,* which concerned a grossly-late 26(B) application.

Therefore we are bound to follow the holding of *White* that 26(B) applications are part of direct review. "When a later decision of this court conflicts with the holding of a prior decision, it is the earlier case that controls." *See Dupont Dow Elastomers, LLC v. NLRB,* 296 F.3d 495, 506 (6th Cir.2002) (citing *Salmi,* 774 F.2d at 689, and 6th Cir. R. 206(c)). Therefore, to the extent that *Isham, Bronaugh, Griffin* and *Searcy* treat 26(B) applications as collateral attacks under § 2244(d)(2), they must be disregarded. We must treat 26(B) applications as parts of direct review under § 2244(d)(1)(A). Hence, the period during which the 26(B) application was pending did not toll the AEDPA statute of limitations. Instead the limitations period begins to run anew at the conclusion of the 26(B) process.

The concurrence contends that *Bronaugh* merely answered a question left unaddressed by *White,* that is whether to count against the AEDPA time-limit the days between the time direct review originally appeared to end and the time the 26(B) process began. *Op.* at 1. However, AEDPA and the holding of *White* do not leave this question unaddressed. A 26(B) application is part of direct review. *White,* 201 F.3d at 752. "The limitation period shall run from ... the date on which the judgment became final by the *conclusion of direct review* or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A) (emphasis added). Without doing violence to every-day, unambiguous language, direct review cannot conclude before all parts of direct review have concluded. The statute of limitation thus could begin to run no earlier than the conclusion of the 26(B) process. Any contrary interpretation is precluded by *White.*

An alternative route to the result of *Bronaugh* is also precluded by the *White*

and the statutory language. One could argue that, although the statute of limitations indeed begins to run at the conclusion of the 26(B) application, as demanded by *White* and AEDPA, by a judicial interpretation-call it inequitable untolling-the limitations period is shortened by the length of time between the original, apparent end of direct review and the initiation of the 26(B) application. There are multiple problems with this argument. Most significantly, the end of direct review is only one of several triggering events listed in § 2244(d)(1). The statute instructs us to treat in the same manner "the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action," § 2244(d)(1)(B), "the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review," § 2244(d)(1)(C), and "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence," § 2244(d)(1)(D). If inequitable untolling applies to § 2244(d)(1)(A), so it does to (B), (C) and (D). The consequence is that if any of the latter events occurred more than a year after original conclusion of direct review, federal habeas review based on these grounds would be unavailable. Given the nature of these events and the lack of control the prisoner has over them, this seems a highly unlikely interpretation. Rather. § 2244(d)(1)(B), (C) and (D) are fairly read to restart the limitations period from the beginning; there is no excuse to read the identical language in (A) differently. Another difficulty with inequitable untolling is that it still would allow a sufficiently legally-shrewd Ohio prisoner to cir-

cumvent the AEDPA statute of limitation entirely. All the prisoner would need to do is file a 26(B) application, regardless of how late, and, before the 26(B) process can conclude, file a federal habeas petition. If the habeas petition was filed before conclusion of the 26(B) application, hence before end of direct review, the start of the limitations period, it will be timely, even if at the end of the 26(B) application the statute would immediately close due to inequitable untolling. Note also that 26(B) applications, as part of direct review, are not subject to a "properly-filed" analysis which could have avoided this outcome.

However, even if *Bronaugh* could be reconciled with *White*, our published opinion in *Isham* would remain in open conflict. *Isham*, in five printed pages devoted exclusively to the application of § 2244(d) to 26(B) applications, held that 26(B) applications are part of direct review, without so stating in a single sentence, presumably because it occurred neither to the court nor the parties that this could be in need of stating. Yet, for several reasons, it is undeniable that the *Isham* court made this implicit holding. First, the opinion performs "properly-filed" analysis under § 2244(d)(2), which would be applicable only on collateral review. *Isham*, 226 F.3d at 693–94. Second, the court argues that because § 2244(d)(1)(A) (controlling direct review) explicitly mentions the time for expiry of review, but § 2244(d)(2) (controlling collateral review) fails to mention such time, the statute runs during the time for filing for Supreme Court review of the denial of 26(B) applications. *Id.* at 695. This argument would be perverse if the court had not concluded that 26(B) applications are part of collateral review. Third, the court argues that because a prisoner can file for habeas relief while a petition for certiorari from denial of post-conviction relief is pending, the statute ran while the denial of a 26(B) application could have

been subject to such a petition. *Ibid.* Again, this argument would be meaningless if the court did not consider a 26(B) application part of post-conviction relief. Moreover, nothing in *Isham* suggests that the court merely adopted the position that 26(B) applications are part of collateral review *arguendo*. Therefore, it is difficult to contend that *Isham* and *White* are not in open conflict.

## IV

The total period of time between when Lambert's conviction became final and when his federal habeas petition was deemed filed was 554 days: 104 days until the 26(B) application was filed; 154 days while the 26(B) application was pending in Ohio state courts; 296 days after that. As a 26(B) application is part of direct review, the AEDPA statute of limitation could not run before the conclusion of the 26(B) process. Because the statute only starts to run after the time for file a petition for certiorari on direct review expires, we must discount the 296–day figure by a further 90 days. As Lambert consumed only 206 days of the 365–day statute of limitation, his federal habeas petition was timely under AEDPA.

## V

For the foregoing reasons, we **RE-VERSE** the district court's ruling that Lambert's habeas corpus petition was untimely and **REMAND** for further proceedings not inconsistent with this opinion.

COLE, Circuit Judge, concurring.

I concur only in the judgment reached by the majority today. I believe that we have an obligation to attempt to harmonize the holdings of our prior decisions, and, further, I believe there is a reasonable explanation for the apparent inconsisten-

cies among our precedent that have been pointed out by the majority. As we held in *White v. Schotten*, 201 F.3d 743 (6th Cir.2000), an application pursuant to Ohio Rule of Appellate Procedure 26(B), which is an application "for reopening the appeal from the judgment of conviction," is part of direct appellate review, rather than a part of state collateral, or habeas, review. Unlike the majority, I believe that this Court's decision in *Bronaugh v. Ohio*, 235 F.3d 280 (6th Cir.2001) is reconcilable with *White*. The *Bronaugh* Court carefully considered and followed the core holding of *White*.[1] However, *Bronaugh* addressed a difficult issue that resulted from the nature of Ohio's Rule 26(B) application, which *White* did not explicitly discuss. That issue was whether a habeas petitioner is entitled to receive the benefit of having the federal habeas statute of limitations period tolled during the delay between what would have been the conclusion of state-court direct review—the date on which direct review, exclusive of the filing of the Rule 26(B) application, concluded—and the filing of the Rule 26(B) application. The *Bronaugh* Court concluded that it was inappropriate to permit habeas petitioners to obtain such a benefit as a result of their own delay.

Thus, under *Bronaugh*, when the traditional direct appeal, exclusive of Rule 26(B) review, is concluded, the one-year AEDPA statute of limitations begins to run. However, where the direct appeal is reopened because of a Rule 26(B) application, the time during which the Rule 26(B) application is pending is additional time during which the direct appeal is taking place and, consequently, must be omitted from the § 2244(d)(1) limitations period.

Therefore, the relevant procedural history is as follows. Lambert's appeal to the Ohio Court of Appeals was denied, and a final entry of judgment entered, on June 5, 1998. On July 21, 1998, forty-five days later, the time for appealing to the Ohio Supreme Court expired. Thus, under AEDPA and *Bronaugh*, Lambert's judgment of conviction tentatively became final on this date. *See* 28 U.S.C. § 2244(d)(1) ("The limitation period shall run from ... the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."). However, fifty-two days after the time for appealing to the state supreme court expired, on September 11, 1998,[2] Lambert filed his Rule 26(B) application based on his allegation that his appellate counsel was constitutionally ineffective. Lambert's Rule 26(B) application was not filed within the 90–day period required under Rule 26(B). However, on November 16, 1998, the Ohio Court of Appeals denied the application on both procedural and substantive grounds. On December 28, 1998, Lambert filed an appeal to the Ohio Supreme Court, which was denied on February 17, 1999. Lambert did not seek certiorari review in the United States Supreme Court, but the ninety-day period during which he could have sought review expired on May 18, 1999. Lambert's habeas petition was filed in federal court on January 25, 2000.

Under *Bronaugh*, the time periods between the filing and resolution of each of Lambert's Rule 26(B) application and his subsequent appeal to the Ohio Supreme

---

1. In *Bronaugh*, in addition to considering *White*, the Court considered our subsequent, and contradictory, unpublished decisions.

2. Lambert's *pro se* Application for Reopening Under Appellate Rule 26(B) contains a certification that it was sent via first-class mail from the prison in which he was housed on September 11, 1998.

Court should be excluded from the one-year statute of limitations under AEDPA because these periods are part of the direct review process. I would also exclude the ninety-day period for seeking certiorari to the United States Supreme Court.[3] Thus, the statute of limitations ran for fifty-two days from July 22, 1998 to September 11, 1998. The statute of limitations was tolled until November 17, 1998, when it began again and ran for forty-two days before being stopped on December 28, 1998. The limitations period next ran from May 18, 1999 until Lambert filed his federal habeas petition on January 25, 2000. This period included 253 additional days; therefore, the statute of limitations ran for less than one year before Lambert filed his petition for writ of habeas corpus rendering his petition timely under § 2244(d)(1). Because I believe that, under this Court's precedent, this is the proper analysis of the timeliness of Lambert's claim, I respectfully concur in only the judgment reached by the Court today.

---

3. In *Isham v. Randle*, 226 F.3d 691, 695 (6th Cir.2000) we distinguished the language of § 2244(d)(1) from § 2244(d)(2), which was applicable there, and suggested that this time period should be counted as part of direct review. In *Bronaugh*, the Court assumed without finding that the ninety-day period in which certiorari review of the treatment of the Rule 26(B) application could have been sought would not toll the limitations period under § 2244(d)(1). However, given the dicta in *Isham* and the language of § 2244(d)(1), it appears that this ninety-day period is also part of direct review and therefore would toll the limitations period. *Cf. Clay v. United States*, 537 U.S. 522, 123 S.Ct. 1072, 155 L.Ed.2d 88 (2003) (holding that, for § 2255 purposes, a conviction becomes final when the time for filing a petition for certiorari expires).