*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 114P (6th Cir.)
File Name: 04a114p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

CHARMEL ALLEN,
*Petitioner-Appellant,*

*v.*

No. 03-1078

JOAN N. YUKINS, Warden,
*Respondent-Appellee.*

---

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 01-74002—Victoria A. Roberts, District Judge.

Submitted: March 17, 2004

Decided and Filed: April 20, 2004

Before: KRUPANSKY and GILMAN, Circuit Judges;
RUSSELL, District Judge.[*]

---

### COUNSEL

**ON BRIEF:** Craig A. Daly, Detroit, Michigan, for Appellant. Debra M. Gagliardi, OFFICE OF THE

---

[*] The Honorable Thomas B. Russell, United States District Judge for the Western District of Kentucky, sitting by designation.

ATTORNEY GENERAL, CORRECTIONS DIVISION, Lansing, Michigan, for Appellee.

---

### OPINION

---

RONALD LEE GILMAN, Circuit Judge. Petitioner Charmel Allen, a Michigan state prisoner, appeals from the district court's dismissal of her petition for a writ of habeas corpus. The district court concluded that Allen's petition was barred by the one-year statute of limitations imposed by the Antiterrorism and Effective Death Penalty Act (AEDPA). Allen contends that the district court erred in dismissing her petition. She first argues that her motion for state postconviction relief, which claimed that her counsel on direct appeal had been constitutionally ineffective, should be considered part of the direct appeals process, thus delaying the start of AEDPA's statute of limitations. Alternatively, Allen argues that even if her petition was untimely, the delay should be excused either because she is entitled to equitable tolling or because she is actually innocent of the crime for which she was convicted. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

### I. BACKGROUND

A jury convicted Allen of both felony murder and assault with the intent to commit murder on the basis of an incident that occurred in September of 1990. The Michigan Court of Appeals provided the following summary of the facts underlying Allen's conviction:

Defendant lived in an apartment across the hall from Brian Carson and Larry Wallace, who were roommates. At trial, it was revealed that on the date in question, defendant could not account for approximately $1,200 of her ex-boyfriend's money. Testimony revealed that this

money was derived from the illegal drug trade. The prosecution theorized that defendant was fearful of the probable consequences of her inability to locate the missing funds and, thus, desperately plotted to recoup them. Hence, on the night in question, defendant, accompanied by Anastasia [Allen, the defendant's sister] and [Ronald] Light, forcibly entered Carson's and Wallace's apartment and asked for money—Light possessed a firearm. A struggle ensued. Wallace died as a result of being shot at close range, and Carson was severely wounded.

The Michigan Court of Appeals vacated Allen's conviction for felony murder in May of 1991, but affirmed her conviction for assault with the intent to commit murder. Both the prosecution's application for leave to appeal and Allen's application for leave to cross-appeal were subsequently denied by the Michigan Supreme Court.

On remand to the trial court, Allen pleaded nolo contendere to a charge of manslaughter. The Michigan Court of Appeals affirmed her manslaughter conviction and sentence on September 23, 1997. Allen did not seek leave to appeal this decision to the Michigan Supreme Court.

She later filed a motion for relief from judgment in the trial court on September 28, 1998, seeking resentencing on the assault charge. The trial court denied Allen's motion. She then filed a delayed application for leave to appeal, which was denied by both the Michigan Court of Appeals and the Michigan Supreme Court. The Michigan Supreme Court denied Allen's motion for reconsideration on October 30, 2000.

Allen filed her petition for a writ of habeas corpus in the district court almost a year later, on October 22, 2001. The petition challenges the constitutionality of her conviction and sentence on the assault charge. She does not, however, challenge the constitutionality of either the subsequent plea of

nolo contendere to the manslaughter charge or the resulting sentence.

## II. ANALYSIS

### A. Standard of review

This case is governed by AEDPA, codified principally at 28 U.S.C. § 2254(d), because Allen filed her habeas petition in October of 2001, well after AEDPA's effective date of April 24, 1996. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). Under AEDPA, factual findings made by a state court are presumed correct unless the petitioner rebuts the presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1). We review the district court's decision to deny a writ of habeas corpus de novo. *Gonzales v. Elo*, 233 F.3d 348, 352 (6th Cir. 2000).

### B. Does a state postconviction motion claiming ineffective assistance of appellate counsel restart AEDPA's statute of limitations?

AEDPA imposes a one-year statute of limitations for habeas petitions that challenge state-court judgments. The relevant section provides as follows:

(1) A 1-year statute of limitations shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of time for seeking such review . . . .

28 U.S.C. § 2244(d). AEDPA further provides, however, that the statute of limitations is tolled for "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending . . . ." 28 U.S.C. § 2244(d)(2).

### 1. When did direct review of Allen's assault conviction conclude?

The timeliness of Allen's petition turns on when the judgment in her state case became final, thereby starting AEDPA's one-year limitations period. According to the district court, the triggering event occurred when the Michigan Court of Appeals affirmed Allen's manslaughter conviction and sentence on September 23, 1997. The district court reasoned that Allen's conviction became final 56 days later, on November 18, 1997, when her time to appeal to the Michigan Supreme Court expired. *See* Michigan Court Rule 7.302(C)(2).

Although Allen's brief is not clear on this point, she appears to argue that her conviction was actually final much earlier, on October 14, 1994, when the Michigan Supreme Court denied her application for leave to cross-appeal the Court of Appeals's decision affirming her assault conviction. She argues for this earlier date in the apparent belief that it bolsters her contention that equitable tolling should be applied. *See* Part II.C.1. below. Because Allen's conviction, under this theory, would have been final prior to the enactment of AEDPA, Allen's time to file her habeas petition would have expired on April 24, 1997. *See Austin v. Mitchell*, 200 F.3d 391, 393 (6th Cir. 1999) (holding that petitioners whose convictions became final before the enactment of AEDPA had a one-year grace period after AEDPA's effective date to file their federal habeas petitions). Allen, however, did not file her habeas petition until October 22, 2001, approximately four years and six months later.

We do not have to decide, however, whether the district court was correct in concluding that Allen's conviction did not become final until November 18, 1997. Even giving Allen the benefit of that later date, her petition was still untimely.

If Allen's conviction became final on November 18, 1997, then AEDPA's statute of limitations would have begun running the next day, November 19, 1997. *See* Fed. R. Civ. P. 6 ("In computing any period of time prescribed or allowed by these rules, by the local rules of any district court, by order of court, or by any applicable statute, the day of the act, event, or default from which the designated period of time begins to run shall not be included."). The statutory period would then have been tolled from the date that Allen filed her motion for relief from judgment, September 28, 1998. *See* 28 U.S.C. § 2244(d)(2). At that time, 51 days would have remained of the one-year limitations period.

The state postconviction review process continued until October 30, 2000, when the Michigan Supreme Court denied Allen's motion for reconsideration. *See Carey v. Saffold*, 536 U.S. 214, 219-20 (2002) (concluding that an application for state postconviction relief is pending, and the federal statute of limitations is therefore tolled, "as long as the ordinary state collateral review process is 'in continuance'"). After Allen's motion was denied, the statute of limitations would have continued to be tolled during the 90 days in which Allen could have sought a writ of certiorari from the United States Supreme Court. *See Abela v. Martin*, 348 F.3d 164, 172-73 (6th Cir. 2003) (en banc). That 90-day period would have expired on January 28, 2001, causing the federal statute of limitations to resume running the next day, on January 29, 2001. With 51 days remaining in the statutory period, Allen would have had until March 20, 2001 to file her habeas petition in the district court. But Allen did not file her habeas petition until October 22, 2001, approximately seven months later.

Thus, whether the direct-review process concluded when the Michigan Court of Appeals affirmed Allen's assault conviction, or when that court subsequently affirmed her manslaughter conviction, the result is the same: Allen's petition was untimely. We therefore will assume without

deciding that the district court's analysis was correct, and that Allen's conviction became final on November 18, 1997.

### 2. *Does a state postconviction motion claiming ineffective assistance of appellate counsel restart the one-year limitations period?*

In an attempt to demonstrate that her petition was in fact timely, Allen argues that a state postconviction motion claiming ineffective assistance of appellate counsel should be considered part of the state's direct-review process. Under this theory, Allen's habeas petition would have been timely because the state courts did not finally dispose of her postconviction motion, which claimed ineffective assistance of appellate counsel, until October 30, 2000, less than one year before Allen filed her habeas petition in federal court. Allen relies on this court's decision in *Payton v. Brigano*, 256 F.3d 405 (6th Cir. 2001), in which this court observed in a footnote that, under Ohio law, a state postconviction motion claiming ineffective assistance of appellate counsel is considered part of the state's direct-review process. *Id.* at 409 n.4.

The argument she raises, however, was rejected in *McClendon v. Sherman*, 329 F.3d 490 (6th Cir. 2003), where the petitioner was a Michigan state prisoner, as is Allen. In *McClendon*, this court stated: "We reject McClendon's contention that whenever a prisoner raises an allegation in his state post-conviction proceedings that he was denied the effective assistance of counsel on direct appeal, his conviction does not become final until those state post-conviction proceedings have ended." *Id.* at 493. The *McClendon* court emphasized that, even in the unique context of Ohio law, "upon the filing of an ineffective assistance claim in state court, the statute of limitations is not restarted, but merely tolled." *Id.* at 494.

McClendon clearly holds that a state petition for postconviction review claiming ineffective assistance of

appellate counsel tolls, but does not restart, AEDPA's one-year statute of limitations. Allen therefore filed her habeas petition seven months late, unless she is entitled to the equitable tolling of AEDPA's statutory period.

### C. Is Allen entitled to the equitable tolling of AEDPA's one-year statute of limitations?

Because AEDPA's one-year statute of limitations is not jurisdictional, a petitioner who misses the deadline may still maintain a viable habeas action if the court decides that equitable tolling is appropriate. *Dunlap v. United States*, 250 F.3d 1001, 1007 (6th Cir.), *cert. denied*, 122 S.Ct. 649 (2001). "The petitioner bears the burden of demonstrating that he [or she] is entitled to equitable tolling." *McClendon*, 329 F.3d at 494. In a case like the present one, where the facts are undisputed and the district court decides as a matter of law that equitable tolling does not apply, this court reviews the district court's decision de novo. *Dunlap*, 250 F.3d at 1007-08 n.2.

A court must consider the following factors in deciding whether equitable tolling should apply:

> (1) the petitioner's lack of notice of the filing requirement; (2) the petitioner's lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the respondent; and (5) the petitioner's reasonableness in remaining ignorant of the legal requirement for filing his claim.

*Id.* at 1008. "This list of factors is not necessarily comprehensive, and not all factors are relevant in all cases." *Vroman v. Brigano*, 346 F.3d 598, 605 (6th Cir. 2003). This court has also emphasized that "[a]bsence of prejudice is a factor to be considered only after a factor that might justify tolling is identified." *Id.*

#### 1. *Allen's lack of actual or constructive knowledge of the filing requirement*

Allen first contends that she is entitled to equitable tolling because she lacked actual or constructive knowledge of the filing requirement. This court considered a similar situation in *McClendon*, where the petitioner's conviction became final in August of 1995, before the enactment of AEDPA on April 24, 1996. 329 F.3d at 493. But McClendon did not file his habeas petition until November of 2000, eleven months after this court's decision in *Austin v. Mitchell*, 200 F.3d 391 (6th Cir. 1999). *McClendon*, 329 F.3d at 492. The *Austin* court held that petitioners whose convictions became final before the enactment of AEDPA had until April 24, 1997 to file their habeas petitions. This court in *McClendon* concluded that the decision in *Austin* informed McClendon that the time for filing his habeas petition had lapsed, and that McClendon had shown a lack of diligence by waiting eleven months after *Austin* was decided before filing his habeas petition. *Id.* at 495. McClendon, in other words, had constructive knowledge of the filing requirement through a published opinion of this court.

As discussed above, Allen's conviction became final either prior to the enactment of AEDPA or, as the district court concluded, on November 18, 1997, more than a year after AEDPA's effective date. Allen had notice of AEDPA's one-year statute of limitations either way. If her conviction became final prior to the enactment of AEDPA, then she was on notice of the limitations period when this court decided *Austin*. But Allen contends that *Austin* provided insufficient notice because it was not decided until 1999 and therefore "did absolutely nothing for inmates such as Petitioner, because they could do nothing *retroactively* to file or toll the running of the statute." To the contrary, "a reasonably diligent effort to file within a reasonably quick time [after *Austin* was decided] might have entitled [Allen] to equitable tolling[,]" despite the fact that the statutory period would already have lapsed. *McClendon*, 329 F.3d at 495.

Even assuming that Allen's conviction did not become final until November 18, 1997, as held by the district court, she still had notice of the limitations period. The AEDPA statute plainly states that the one-year statute of limitations runs from the "conclusion of direct review" and that the statutory period is tolled during the time when a motion for state postconviction review is pending. 28 U.S.C. §§ 2244(d)(1)-(2). These statutory provisions clearly explained to Allen how AEDPA's statute of limitations would apply to her case. Notice by means of a statute, moreover, is certainly as adequate as notice through a published court opinion.

Allen, however, contends that confusion existed about the application of AEDPA's statutory period. According to Allen,

> [i]n light of the fact that the court's [sic] were having difficulty in interpreting and applying the statute of limitations for inmates whose convictions occurred before the enactment of AEDPA, it can hardly be said that inmates themselves *should* have known how the statute would operate.

But the district court explained the flaw in Allen's argument as follows:

> The law was somewhat unsettled as [to] petitioners whose convictions became final before the effective date of AEDPA. This Court is not aware, however, of the law being unsettled regarding when the one year statute of limitations would begin running for petitioners such as Allen, whose convictions became final after the effective date of AEDPA.

Because of this court's decision in *Austin* and AEDPA's clear provisions regarding the statute of limitations, Allen cannot claim a lack of constructive knowledge regarding the filing deadline. Even if Allen lacked actual knowledge of the relevant provisions of AEDPA, this court has repeatedly held

that "ignorance of the law alone is not sufficient to warrant equitable tolling." *Rose v. Dole*, 945 F.2d 1331, 1335 (6th Cir. 1991). We therefore conclude that Allen's purported lack of actual or constructive knowledge does not make equitable tolling appropriate.

### 2. Allen's lack of diligence in pursuing her rights

Allen next contends that equitable tolling is appropriate because she was diligent in pursuing her rights. Using the district court's analysis of the date on which Allen's conviction became final, however, she filed her habeas petition approximately seven months late. Under the alternative analysis, her petition would have been filed approximately four years and six months late. Even giving Allen the benefit of the shorter period, she still has offered no adequate reason for the delay.

Allen contends, however, that one reason for her delay is that she received mistaken advice contained in two letters written to her by her attorney. The first is dated September 20, 1995, when the cases of Allen's codefendants were still pending in the Michigan Supreme Court. Allen's case had returned to the trial court, where she eventually pled nolo contendere to a charge of manslaughter. In the first letter, the lawyer advised Allen to wait and see how the Supreme Court decided her codefendants' cases before she decided whether to appeal a pretrial order in her remanded proceeding.

Assuming, once again, that Allen's conviction was not final until soon after the Michigan Court of Appeals affirmed her manslaughter conviction and sentence, the attorney's advice to Allen in the first letter is not relevant to Allen's delay in filing her federal habeas petition. At the time the attorney wrote the letter, Allen had not yet pled guilty to manslaughter, much less started the process of direct review. AEDPA, however, clearly states that the statute of limitations runs

from the conclusion of direct review. 28 U.S.C. § 2244(d)(1)(A). The advice of the attorney, therefore, could not have affected Allen's federal rights. Even if Allen had followed the attorney's suggestion and delayed her decision of whether to appeal the pretrial order, the federal statute of limitations still would not have started until the conclusion of both the trial proceedings and direct review.

The second letter to Allen from her attorney is dated March 24, 1997, which was after Allen was sentenced on the manslaughter charge, but before Allen had appealed that conviction and sentence to the Michigan Court of Appeals. In the second letter, Allen's attorney states: "I know you have asked about federal habeas corpus relief. I'm not an expert on that procedure, but it would seem to me that you are a long way from exhausting your state court remedies, a prerequisite typically to federal relief." Allen contends that the attorney's "lack of knowledge of the statute of limitations" is a factor that supports the application of equitable tolling in this case.

This court has held, however, that a petitioner's reliance on the unreasonable and incorrect advice of his or her attorney is not a ground for equitable tolling. *Jurado v. Burt*, 337 F.3d 638, 644-45 (6th Cir. 2003). Although not directly on point, *Jurado* suggests that equitable tolling is not appropriate in this case. In *Jurado*, the attorney (unintentionally) misled the petitioner; in the present case, Allen's attorney simply admitted that he was not an expert in federal habeas procedures. The advice that Allen's attorney *did* provide, moreover, was correct: Allen could not file a habeas petition until she had exhausted her state remedies. *See* 28 U.S.C.§ 2254(b)(1) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—(A) the applicant has exhausted the remedies available in the courts of the State . . . .").

If equitable tolling was not appropriate in *Jurado*, where the petitioner detrimentally relied on the unintentionally

incorrect advice from his attorney, then tolling is certainly not appropriate here, where Allen's attorney simply admitted that he lacked the relevant legal knowledge and gave Allen advice that was, in fact, correct. The attorney's second letter to Allen therefore provides no basis for the application of equitable tolling.

### 3. Length of Allen's delay in filing her habeas petition

Allen also claims that she is entitled to equitable tolling because the seven-month delay between the conclusion of the state postconviction proceedings and the time she filed her habeas petition was reasonable. But this court has declined to apply equitable tolling where the delay was far less than seven months. *See, e.g., Cook v. Stegall*, 295 F.3d 517, 518 (6th Cir. 2002) (concluding that equitable tolling was not appropriate where the petitioner filed his habeas petition one month late); *Dunlap v. United States*, 250 F.3d 1001, 1010 (6th Cir. 2002) (holding that the petitioner was not entitled to equitable tolling where he filed his habeas petition more than two months late). In light of *Cook* and *Dunlap*, the length of Allen's delay does not support the application of equitable tolling; in fact, the length of her delay actually suggests that equitable tolling is not appropriate in this case.

### 4. Lack of prejudice to the respondent

Allen finally argues that equitable tolling is appropriate because the state has not been prejudiced by the delay. As noted above, however, this court has held that the "[a]bsence of prejudice is a factor to be considered only after a factor that might justify tolling is identified." *Vroman v. Brigano*, 346 F. 3d at 605. Because Allen has failed to demonstrate the existence of a factor that justifies tolling, we may not consider the alleged lack of prejudice.

### D. Does Allen's claim of actual innocence allow her to circumvent AEDPA's statute of limitations?

Allen finally contends that, even if her habeas petition was untimely, her claims should still be considered because she is actually innocent of the assault-with-the-intent-to-commit-murder charge. Although one district court within this circuit has held that the United States Constitution requires an actual-innocence exception to AEDPA's statute of limitations, *see Holloway v. Jones*, 166 F. Supp. 2d 1185, 1190 (E.D. Mich. 2001), this court has never endorsed that view. One case that provides useful guidance, however, is *Whalen v. Randle*, 2002 WL 409113 (6th Cir. March 12, 2002) (unpublished opinion), where this court declined to decide whether an actual-innocence exception exists because the petitioner in that case was "unable to demonstrate that he was actually innocent of the charges for which he was convicted." *Id.* at *7.

Although the *Whalen* court declined to adopt an actual-innocence exception, the court suggested the likely requirements of such a claim:

> Other circuits that have considered such an exception have set a very high bar for actual innocence claims, since a substantial claim that constitutional error has caused the conviction of an innocent person should be extremely rare. The exception requires petitioner to "show that it is more likely than not" that no reasonable juror would have found [him] guilty beyond a reasonable doubt in light of all the evidence. The petitioner must produce evidence of innocence so strong that the court can not "have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error."

*Id.* at *6 (citations omitted).

In the present case, Allen first contends that the evidence presented at trial was insufficient to demonstrate that she aided and abetted the gunman, Ronald Light, in committing the crime of assault with the intent to commit murder. But this evidence was actually presented to a jury, which found Allen guilty. Allen therefore cannot credibly contend that no hypothetical reasonable juror, after hearing the trial evidence, would have found Allen guilty beyond a reasonable doubt; an entire jury did exactly that.

Beyond the trial evidence, Allen also claims that affidavits by her codefendants, Anastasia Allen and Light, demonstrate her innocence. Her sister Anastasia's affidavit states:

1. That I, Anastasia Allen, did not hear Charmel Allen ask, nor encourage, instigate, express nor imply to Ronald Light that she desired him to assault Brian Carson, and;

2. That I, Anastasia Allen and Charmel Allen never discussed, planned nor intended for Ronald Light to assault Brian Carson before, during, after nor in the presence [sic].

In a similar vein, Light's affidavit reads:

1. That I, Ronald Light, did not receive any assistance, encouragement, nor counseling from Charmel C. Allen, and;

2. That there was not a common design or purpose between Charmel Allen and I, and;

3. That Charmel Allen and I did not share any criminal intent on the assault against Brian Carson, and;

4. That no advice or advisement was given to me by Charmel Allen during, before, in between nor after the assault on Brian Carson.

Anastasia's affidavit in essence states that (1) Allen did not, *in the presence of Anastasia*, encourage Light to shoot Carson, and (2) Allen and Anastasia did not jointly encourage Light to shoot Carson. But the affidavit does not eliminate the possibility that Allen, *outside of the presence of Anastasia*, encouraged Light to shoot Carson. Anastasia's affidavit is therefore insufficient to demonstrate actual innocence.

Light's affidavit, on the other hand, has the potential to exculpate Allen. As the district court noted, however, postconviction statements by codefendants are inherently suspect because codefendants may try to assume full responsibility for the crime without any adverse consequences. But Allen contends that the district court's analysis was incorrect because "Mr. Light has effectively deprived himself of any opportunity to seek legal recourse for his release by signing the affidavit and disclosing the truth." The flaw in Allen's argument, however, is that Light's affidavit *exculpates* Allen, but does not actually *inculpate* Light in any way. Thus, the district court correctly concluded that Light's affidavit was inherently suspect because Light could have signed the affidavit in order to help his codefendant Allen without endangering his own interests.

Aside from its lack of reliability, Light's affidavit is insufficient to demonstrate that Allen is innocent because Light's assertions are inconsistent with the evidence presented at trial. According to the Michigan Court of Appeals, the evidence introduced at trial demonstrated the following:

- On the date of the incident, Allen could not account for $1,200 of her ex-boyfriend's money;

- Allen "orchestrated the plan to bring Anastasia and Light to Wallace's and Carson's apartment";

- After arriving at the apartment, Allen "coaxed Carson into unlocking his door";

- Allen, Anastasia, and Light then "forcibly entered" the apartment;

- "[W]hile Light pointed the gun at Carson and Wallace, [Allen] demanded money."

We must presume that these factual findings by the Michigan Court of Appeals are correct unless Allen rebuts that presumption with clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

Light's affidavit essentially asserts that Allen never encouraged him to participate in either the attempt to get money from Carson and Wallace or the shooting. This assertion is inconsistent with the evidence presented at trial demonstrating that Allen, not Light, had the motive to obtain money from Carson and Wallace. Light's affidavit is also contrary to the Michigan Court of Appeal's finding that Allen "orchestrated the plan to bring Anastasia and Light to Wallace's and Carson's apartment."

This court noted in *Whalen* that the actual-innocence exception "requires petitioner to 'show that it is more likely than not' that no reasonable juror would have found [him] guilty beyond a reasonable doubt in light of all the evidence." 2002 WL at *6 (citing *Schlup v. Delo*, 513 U.S. 298, 327 (1995)). In the present case, Allen's evidence of her alleged innocence consists of two postconviction affidavits from her codefendants. One affidavit is facially insufficient to establish that Allen is innocent; the other is inherently unreliable and contradicted by the evidence presented at trial. In light of the foregoing, we conclude that a reasonable juror could easily find beyond a reasonable doubt that Allen is guilty of assault with the intent to commit murder.

Because the affidavits are legally insufficient to establish that Allen is actually innocent of the assault charge, we will follow the lead of the *Whalen* court and "decline to reach the

question of whether the Constitution requires an actual-innocence exception to [28 U.S.C.] § 2244(d)(1)." *Id.* at *7.

### III.  CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.