*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 05a0123p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

THOMAS M. KEENAN,

*Petitioner-Appellant,*

*v.*

MARGARET BAGLEY, Warden,

*Respondent-Appellee.*

No. 03-3834

>

---

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 01-02139—David A. Katz, District Judge.

Argued: September 23, 2004

Decided and Filed: March 10, 2005

Before: MERRITT, SILER, and GILMAN, Circuit Judges.

---

**COUNSEL**

**ARGUED:** Jeffrey M. Gamso, Jeffrey J. Helmick, GAMSO, HELMICK & HOOLAHAN, Toledo, Ohio, for Appellant. Henry G. Appel, ATTORNEY GENERAL'S OFFICE OF OHIO, Columbus, Ohio, for Appellee. **ON BRIEF:** Jeffrey M. Gamso, GAMSO, HELMICK & HOOLAHAN, Toledo, Ohio, for Appellant. Henry G. Appel, ATTORNEY GENERAL'S OFFICE OF OHIO, Columbus, Ohio, for Appellee.

GILMAN, J., delivered the opinion of the court. MERRITT, J. (pp. 6-10), delivered a separate opinion concurring in part and dissenting in part. SILER, J. (pp. 11-12), delivered a separate dissenting opinion.

---

**OPINION**

---

RONALD LEE GILMAN, Circuit Judge. Thomas M. Keenan appeals the district court's judgment that dismissed as untimely his petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. For the reasons set forth below, we vacate the judgment and remand the case for an evidentiary hearing to determine whether Keenan may avail himself of the doctrine of equitable tolling.

1

# I. BACKGROUND

Keenan is an Ohio prisoner who has been sentenced to death for the murder of Anthony Klann. The factual background surrounding the crime is extensively detailed in *State v. Keenan*, 689 N.E.2d 929, 935-36 (Ohio 1998), but is not directly relevant to the issue before us.

Procedurally, Keenan was indicted for aggravated burglary along with the kidnaping and aggravated murder of Klann on October 6, 1988. In 1989, Keenan was convicted by a jury and sentenced to death by the trial court. The Ohio Court of Appeals affirmed Keenan's conviction and death sentence in 1990. This conviction was reversed, however, and the case remanded for a new trial by the Ohio Supreme Court on the basis of prosecutorial misconduct. *State v. Keenan*, 613 N.E.2d 203 (Ohio 1993).

The second trial took place in 1993-94. Keenan was again convicted by the jury and sentenced to death, and the final judgment of the trial court was again affirmed by the Ohio Court of Appeals. On November 6, 1996, Keenan submitted the transcript from this second trial to the Ohio Supreme Court, thus initiating his appeal to that court. This date is key to the issue before us, because it marks the point at which his 180-day statute of limitations for state postconviction relief began to run under Ohio Rev. Code Ann. § 2953.21. By the time that this statute of limitations expired, on May 5, 1997, Keenan had yet to file a petition for state postconviction relief.

Keenan's second conviction was affirmed on February 25, 1998 by the Ohio Supreme Court. *State v. Keenan*, 689 N.E.2d 929 (Ohio 1998). The United States Supreme Court denied certiorari on October 5, 1998, another key date in this case. *Keenan v. Ohio*, 525 U.S. 860 (1998). This denial initiated the one-year statute of limitations for petitioning for federal habeas relief under 28 U.S.C. § 2244(d)(1).

The controversy in the present case was precipitated by a so-called *Glenn* order issued by the Ohio Supreme Court on November 30, 1998. That order provided as follows:

> IT IS FURTHER ORDERED by the court that, pursuant to *State v. Glenn* (1987), 33 Ohio St.3d 601, 514 N.E.2d 869, a stay is granted for a period of six months, beginning October 23, 1998 and ending April 23, 1999, to allow appellant an opportunity to file a petition for post-conviction relief.

*State v. Keenan*, 702 N.E.2d 901 (Ohio 1998) (unpublished). Significantly, Keenan's 180-day statute of limitations granted by Ohio Rev. Code Ann. § 2953.21 had already expired.

Keenan filed a petition for state postconviction relief in the Cuyahoga County Court of Common Pleas on March 26, 1999. This petition was well within the six-month time frame set out by the Ohio Supreme Court in the *Glenn* order. All of the parties agree, however, that this petition was filed almost two years after the expiration (on May 5, 1997) of the 180-day statute of limitations specified in Ohio Rev. Code Ann. § 2953.21.

The Ohio trial court denied the petition on its merits in 1999. On appeal, the Ohio Court of Appeals affirmed the trial court's denial, but based its decision on the ground that Keenan's petition was untimely under Ohio Rev. Code Ann. § 2953.21, and that Keenan had failed to meet any of the statute's exceptions for his late filing. *State v. Keenan*, No. 77480, 2001 WL 91129, at *3 (Ohio Ct. App. Feb. 1, 2001) (unpublished). The Ohio Supreme Court denied leave for a discretionary appeal in *State v. Keenan*, 749 N.E.2d 756 (Ohio 2001) (unpublished).

On September 7, 2001, almost two years after the one-year statute of limitations under 28 U.S.C. § 2244(d)(1) had expired, Keenan filed a notice of intent to file a § 2254 petition with the federal district court. The district court ordered the parties to submit a procedural timeline to

determine whether Keenan's state postconviction proceedings had tolled the federal statute of limitations. Keenan filed his federal petition in November of 2001. In January of 2002, the Warden filed a motion to dismiss on the basis of the statute of limitations. She argued that since the Court of Appeals had ruled that Keenan's state postconviction relief petition was time-barred under Ohio law, the federal petition was also time-barred because the petition for state postconviction relief could not have tolled the federal statute of limitations under 28 U.S.C. § 2244(d)(2).

The district court agreed with the Warden's position and dismissed Keenan's petition as time-barred. It also found that Keenan had not demonstrated a basis for equitable tolling, nor had he demonstrated that he could avail himself of any actual-innocence exception to the limitations period. The court, however, granted a certificate of appealability on the timeliness issue. Keenan also filed a motion to alter or amend the record, arguing that the district court should have certified three questions relating to the timeliness of his petition to the Ohio Supreme Court. The district court denied the motion, but granted a certificate of appealability as to the issues raised within the motion. Keenan's appeal under these certifications is now before us.

## II. ANALYSIS

The district court's decision to deny a writ of habeas corpus is reviewed de novo. *Allen v. Yukins*, 366 F.3d 396, 399 (6th Cir. 2004). "[W]here the facts are undisputed and the district court decides as a matter of law that equitable tolling does not apply, this court reviews the district court's decision de novo." *Id*. at 401. However, "[t]he petitioner bears the burden of demonstrating that he is entitled to equitable tolling." *Id*. (quoting *McClendon v. Sherman*, 329 F.3d 490, 494 (6th Cir. 2003)).

Keenan argues at length that his petition for state postconviction relief was indeed timely filed. For the purposes of Keenan's petition for federal habeas relief, this is the central issue before us. There is a one-year limitations period during which a state prisoner may file for a writ of habeas corpus in federal court. 28 U.S.C. § 2244(d)(1). In Keenan's case, the statute of limitations began to run on October 5, 1998, the date that the United States Supreme Court denied certiorari and his conviction became "final" under the statute. *See Clay v. United States*, 537 U.S. 522, 528 n.3 (2003). Under ordinary circumstances, Keenan would have had until October 5, 1999 to file for relief in federal district court. He did not file, however, until November 21, 2001.

Nonetheless, "[t]he time during which a properly filed application for State post-conviction or other collateral review . . . is pending shall not be counted" toward the limitations period. 28 U.S.C. § 2244(d)(2). "[A]n application is '*properly* filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings. These usually prescribe, for example, . . . time limits upon its delivery." *Artuz v. Bennett*, 531 U.S. 4, 8 (2000) (emphasis in original). In Keenan's case, if his petition for state postconviction relief had been "properly filed," the federal one-year period to file under 28 U.S.C. § 2244(d)(1) would have been tolled, thus rendering timely Keenan's federal petition.

We are unable, however, to reach a conclusion on the timeliness issue at this time. Even if Keenan's petition for state postconviction relief was *improperly* filed, he may be able to proceed on the basis of his equitable-tolling argument. "Equitable tolling is permissible under the Anti-Terrorism and Effective Death Penalty Act (AEDPA) [28 U.S.C. § 2254], although rare." *King v. Bell*, 378 F.3d 550, 553 (6th Cir. 2004). Our focus on AEDPA causes us to respectfully disagree with the dissent's statement that "we are asked to toll the statute of limitations under Ohio law, after the Ohio Court of Appeals has determined that the petition was untimely." (Dissenting Op. at 11) To the contrary, the application of equitable tolling is a question of federal law. Our present discussion impacts only Keenan's filing for federal habeas relief, not the timeliness of his petition for state postconviction relief.

In essence, the doctrine of equitable tolling allows federal courts to toll a statute of limitations when "a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control." *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 560-61 (6th Cir. 2000). This circuit has adopted a straightforward test for analyzing equitable-tolling claims. The factors to be considered are "(1) lack of actual notice of filing requirement; (2) lack of constructive knowledge of filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the defendant; and (5) a plaintiff's reasonableness in remaining ignorant of the notice requirement." *Andrews v. Orr*, 851 F.2d 146, 151 (6th Cir. 1988). Furthermore, these factors "are not necessarily comprehensive or always relevant; ultimately every court must consider an equitable tolling claim on a case-by-case basis." *King*, 378 F.3d at 553.

In the present case, the Ohio Supreme Court issued its *Glenn* order on November 30, 1998, a year and a half *after* Keenan's time for filing for state postconviction relief had expired under Ohio Rev. Code Ann. § 2953.21. Keenan, however, still had over 10 months from that point in which to file for habeas relief in federal district court. But, for reasons impossible to determine from the record before us, he chose to file for postconviction relief not in federal court—which was still a venue properly available to him—but in state court. Had he instead filed a petition for habeas relief in federal court, the state would have been unable to argue, as it does now, that his petition is barred by the statute of limitations.

The key question for the purposes of equitable tolling, therefore, is why Keenan filed for state postconviction relief, as opposed to federal habeas relief, on March 26, 1999. If Keenan indeed relied on the literal language of the Ohio Supreme Court's *Glenn* order in structuring his legal strategy, then his argument for equitable tolling might be very strong. For example, the petitioner in *King v. Bell*, 378 F.3d 550 (6th Cir. 2004), was prevented from filing a timely federal habeas petition because of governmental delay in providing him with the trial transcript. In all other respects, however, the petitioner had completely complied with the court-approved timetable. This court applied the doctrine of equitable tolling and concluded that the petitioner "had no reason to anticipate any procedural difficulties: he had complied with the court-approved schedule . . . and with the court's original order to include all his arguments in one petition." *Id.* at 553.

Indeed, based on the evidence before us, Keenan might have reasonably viewed the Ohio Supreme Court's order as granting him extra time to properly file a petition for state postconviction relief. He might have assumed that any time spent pursuing this avenue would toll his federal statute of limitations. Thus, given the *Glenn* order, he might have believed that filing for state postconviction relief would not prevent him from later filing for federal habeas relief. The record before us, however, contains no mention of Keenan's motivation in filing for state postconviction relief instead of federal habeas relief. We cannot determine with any certainty whether he relied on the *Glenn* order when deciding to file for state postconviction relief. Without more information, we cannot ascertain if Keenan may avail himself of equitable tolling.

Whether this case presents one of those rare occasions in which equitable tolling under AEDPA is proper is an issue appropriately handled by the district court in the course of an evidentiary hearing. In so remanding, we note that the district court must consider the "(1) lack of actual notice of filing requirement; (2) lack of constructive knowledge of filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the defendant; and (5) a plaintiff's reasonableness in remaining ignorant of the notice requirement." *Andrews v. Orr*, 851 F.2d 146, 151 (6th Cir. 1988). Keenan might claim that he did indeed rely on the *Glenn* order in postponing his claim for federal habeas relief, but the district court must then decide whether such a reliance, in light of all the *Andrews* factors, was reasonable. The answer to this question, we believe, will determine whether there is merit to Keenan's argument that equitable tolling should be applied to the case before us.

## III. CONCLUSION

For all of the reasons set forth above, we **VACATE** the judgment of the district court and **REMAND** the case to the district court for an evidentiary hearing in accordance with this opinion.

---

### CONCURRING IN PART, DISSENTING IN PART

---

MERRITT, Circuit Judge, concurring in the remand but dissenting from the failure to allow the case to go forward on the merits of the constitutional claims. Thomas Keenan, a petitioner condemned to death in Ohio, brings his first habeas case in federal court. He presents a number of plausible claims, including an actual innocence claim. By stretching and stitching together procedural default and statutory limitations arguments, the State seeks to forfeit all of Keenan's constitutional claims so that he will now be executed without federal review of any kind.

The State treats as a state procedural default the condemned prisoner's state habeas petition filed on March 26, 1999. As a result, counsel for the State asks the court to refuse to toll the running of the one-year, federal limitation period under 28 U.S.C. § 2244(d)(2). There are four reasons that it is wrong to procedurally default as "improperly filed" the state post-conviction petition and decline to toll the running of the federal statute of limitations.

*First*, immediately after the U.S. Supreme Court denied certiorari, the state Supreme Court in its October 1998 order expressly "granted a period of six months beginning October 23, 1998, and ending April 23, 1999, *to allow* appellant an opportunity to file a petition for post-conviction relief." The petition was then filed five months later, a month before the time was up. It is difficult to understand how the Ohio Supreme Court could have been any plainer in setting out the time "to allow" a condemned prisoner to file "for post-conviction relief" after the U.S. Supreme Court denied certiorari. "You have six months to file." That is what the Ohio Supreme Court said. The reasonable expectation of a lawyer reading the order would be that it allows six month's time for filing. The State refuses to apply this plain language and would refuse to allow the federal tolling statute to operate because it says that the time allowed for filing the state petition ran out long before the U.S. Supreme Court denied certiorari and long before the state Supreme Court entered its order "to allow" the filing of the state petition. So the two years the petitioner waited in the Ohio courts for his petition to be decided cannot be used or counted to toll under the federal statute. The State Attorney General argues that in order to toll the statute the petitioner should have filed 8 months before the state death penalty judgment became final in the Ohio Supreme Court and 16 months before it became final after the U.S. Supreme Court denied certiorari. The condemned prisoner will be executed without review of his federal constitutional claims because he complied with the express language of the state Supreme Court allowing him six months to file.

Upon remand, by this Court's opinion, one essential question for the District Court is whether Keenan was relying on the Supreme Court's order when he opted to file his state post-conviction petition prior to his federal habeas petition. I find it apparent that the Ohio Supreme Court order plainly implied that Keenan had six months to pursue state post-conviction relief rather than six months to pursue federal habeas relief. First, the court's order used the term "petition for post-conviction relief," which is the very title of the state collateral attack as put forth in Ohio Rev. Code Ann. § 2953.21. The court was clearly referring to a state post-conviction petition rather than post-conviction relief generally or a federal habeas petition. Second, when the *Glenn* order was issued in October 1998, Keenan had just over 10 months left to file his federal habeas petition. Certainly the Ohio Supreme Court was not suggesting that he had only six months to file his federal habeas petition. The time frame clearly referred to state post-conviction relief. Thus, it is easy to see why Keenan, relying on the Supreme Court order, filed a state post-conviction petition in state court within six months, rather than a federal habeas petition. As Keenan almost certainly relied on the Ohio Supreme Court's order, this court should equitably toll the limitations period as Keenan had no actual notice that this filing would be improper and any ignorance regarding any forfeiting effect was reasonable in light of the Supreme Court order. The majority of this court does not find

sufficient evidence in the record to demonstrate that Keenan actually relied upon the natural implication of the Ohio Supreme Court's order. The lower court on remand, therefore, should equitably toll the limitations period if the record demonstrates that Keenan relied on the Supreme Court order in proceeding to state court first.

*Second*, despite the plain English of the Ohio Supreme Court's order, the State would procedurally default the tolling claim, and hence all other federal claims, by saying simply that the Ohio Court of Appeals opinion dismissing the state petition on "jurisdiction" grounds controls our decision on tolling even though that court did not mention or purport to interpret the federal tolling statute or even know that its action would deny federal review. The State reads the Ohio court's refusal to hear the state post-conviction petition as forfeiting all federal claims because it used the "jurisdiction" talisman rather than dismissing on other grounds. The Ohio Court of Appeals ruled *sua sponte*, without argument or briefing, that Keenan's state claims were late after two years of litigation in state court. That ruling should not control our tolling decision. Broad delegation to state courts of the authority to control access to federal habeas review in this way effectively suspends the writ of habeas corpus and prevents our review of the constitutionality of state death sentences. Moreover, we should permit equitable tolling now because had the Ohio court advised Keenan of its "jurisdictional" dismissal within six months, he could have filed his petition within the one year period, and tolling would not have been an issue at all. In addition to relying on the Supreme Court's *Glenn* order, Keenan also relied on the state trial court's implicit conclusion that his post-conviction petition was properly filed. The State made no objection, and Keenan was entitled to believe throughout the lower state court proceedings that he had not made a "jurisdictional" or other mistake that would prevent the tolling of the federal statute of limitations.

*Third*, the Ohio legislature passed the new Ohio collateral review statute on capital punishment — the one construed by the Ohio Court of Appeals — in order to require the death penalty prisoner to file his petition within six months of the date of filing of the trial record in the Ohio Supreme Court. (See the Appendix to this opinion for a time line under this statute.) Under this statutory scheme, the statute of limitations on collateral review will almost always run before the prisoner's direct appeal is concluded. In the present case, the collateral review statute ran 16 months before the death sentence in this case became final when the U.S. Supreme Court denied certiorari. This system requires post-conviction counsel to file claims of ineffective assistance of trial and appellate counsel, prosecutorial suppression of exculpatory evidence, newly discovered evidence and similar claims even before Ohio's Supreme Court considers the case on appeal and before trial and appellate counsel are replaced by post-conviction counsel.[1] If not so filed, the claims are defaulted and tolling defeated, according to the state.

The result of this state statutory scheme, as it interlocks with the various federal forfeiture rules, is that one or more of the federal forfeiture rules can always be stretched to bar consideration on the merits of some or all of the prisoner's federal claims. For example, in the present case, assuming Keenan filed his state petition within the 180 day period and it was dismissed, Keenan would have been required to file his federal petition on his collateral claims denied in state court before his claims on direct review were final. These direct review claims when filed would then

---

[1] The Ohio statutory process in death penalty cases makes the *American Bar Ass'n Guidelines for the Appointment of Counsel in Death Penalty Cases* §§ 1.1 and 15.1 (2003) practically impossible to meet. The ABA standards contemplate the appointment of new or separate counsel at the habeas stage of the case. If the post conviction and federal habeas stages of the case must begin before final judgment, the appointment of new counsel becomes difficult to manage. It did not occur in the present case until after the direct appeal and state habeas proceedings were over. By then, according to the majority, the untolled federal statute had run and Keenan was foreclosed from federal review.

have to be treated as second or successive claims forbidden by AEDPA.[2]  On the other hand, if in some cases the Ohio state collateral review process should end after the death sentence becomes final on direct review, the federal issues presented for collateral review would come later.  They would become a second petition.  This Ohio inversion, together with AEDPA's one-year statute of limitations, the State's strict construction of tolling, and the successive petition rule, further complicates an already-complicated process.  The whole system becomes a trap for the unwary, a maze designed to dispatch the capital defendant to the executioner's block without federal review.  Such a system is like a nightmare, except its consequences are lethal.

*Fourth*, either no lawyer should be faulted for not being able to work through this maze, in which case surely equitable tolling should apply, or the ignorance of counsel is the reason.  After procedurally defaulting the federal tolling period because counsel for Keenan did not file the state post-conviction petition 16 months before the death verdict was finally final, the State Attorney General's office then argues against the application of equitable tolling because attorney error is said not to be a legitimate basis for equitable tolling.  This argument is wrong.  *See Baldayague v. United States*, 338 F.3d 145, 152-53 (2d Cir. 2003), and *Nara v. Frank*, 264 F.3d 310, 320 (3d Cir. 2001), *rev'd on other grounds*, *Carey v. Safford*, 536 U.S. 214 (2002), both of which agree that the actions of counsel can supply a basis for equitable tolling.  Equitable tolling should save the petition either because the Ohio statutory maze created a situation that no sane lawyer could figure out or because an effective lawyer would have found some solution that escapes me — one or the other.

In *Lambert v. Warden*, a comprehensive opinion at 2003 Westlaw 22071466, decided September 2, 2003, Judge Boggs set out his understanding of the sequence of review of criminal judgments in Ohio:

> Direct review immediately follows trial, generally is constrained by tight, nonwaivable time limits and concludes with finality of judgment.  Collateral review focuses on the adequacy of the trial and direct review, rather than the underlying merits of the original action.  As such, it necessarily follows direct review . . . . The structure of the AEDPA statute of limitations meshes with this understanding of the distinction between direct and collateral review . . . . *Of course, allowing the statute of limitations to run out while the prisoner is still pursuing state post-conviction remedies combined with AEDPA's exhaustion requirement would be manifestly unjust.*  Therefore, AEDPA tolls the statute of limitations during state post-conviction proceedings.  28 U.S.C. § 2244(d)(2).  Again, the language of the provision agrees with the properties of collateral attacks.  *As collateral attacks follow direct review, and therefore the start of the limitations period, it makes sense to speak of tolling the period.*  (Emphasis added.)

The opinion discusses the normal way the legal profession thinks about the sequencing of review in criminal cases.  A lawyer should not be expected to anticipate that he will be thrown out of court on statute of limitations grounds when he has what would appear to be a reasonable state post-conviction proceeding pending.  If Judge Boggs and the two other members of the panel in the *Lambert* case think that this is the way the Ohio system works (and *Lambert* is an Ohio case), then it is hard to expect a lawyer to foresee the consequences that the State Attorney General would apply in this case.  Those statements in Judge Boggs' opinion are part of a comprehensive treatment of Ohio post-conviction law.  And even after a diligent study of Ohio post-conviction law, Judge Boggs

---

[2]AEDPA contemplates three stages of review followed in sequence:  "direct review," then "State post-conviction" review, then federal habeas review, 28 U.S.C. §§ 2244(d), 2254.  That is the historical tradition for sequencing review.  The Ohio statute reverses the sequence of the first two stages and makes § 2244(d) impossible to apply in the normal way.

and the panel did not foresee that the sequencing of Ohio's review process would require the post-conviction process to occur before the direct appeal is completed.

## Conclusion

In light of (1) the plain language of the Ohio Supreme Court in Keenan's case allowing the filing of the state habeas petition, (2) the action of the Ohio Court of Appeals requiring the filing to occur 16 months before the capital judgment became final, (3) the forfeiture puzzle created by the interaction of the state timing statute in death cases, the federal one-year limitations statute and the second or successive petition rule, or (4) the error of counsel in preserving Keenan's right to one round of federal habeas review, I would toll the running of the statute of limitations — either on legal or equitable grounds — and allow this first federal habeas petition to go forward on the merits.

**APPENDIX**


The relevant dates for this matter are as follows:


| Event | Date | Location in the Record |
|---|---|---|
| Trial Court Journalized Keenan's Sentence (triggers 120 day deadline for requesting new trial) | 5/16/94 | Doc. R. 41, Apx. at Vol. 1, p. 379; 6th Cir. Apx. at 100. |
| Ohio Supreme Court received the record on direct appeal (triggers 180 day deadline for state post-conviction action) | 11/6/96<br><br>May 6, 1997 | Doc. R. 43, Apx. at Vol. III, pp. 1, 51; 6th Cir. Apx. at 105, 106. *See also* Doc. R. 20, Exhibit B; 6th Cir. Apx. at 97. |
| Ohio Supreme Court's Decision | 2/25/98 | *See State v. Keenan*, 81 Ohio St.3d 133 (1998). |
| United States Supreme Court denies certiorari on direct appeal (triggers 365 day deadline for filing federal habeas corpus petition) | 10/5/98 | Doc. R. 43, Apx. at Vol. III, p. 362; 6th Cir. Apx. at 107. *See also Keenan v. Ohio*, 525 U.S. 860 (1998). |
| Post-Conviction Petition /Motion for New Trial filed in Ohio trial court | 3/26/99 | Doc. R. 44, Apx. at Vol. IV, p. 1; 6th Cir. Apx. at 111. |
| Eighth District Court of Appeals holds that Keenan's Post-Conviction Action is Untimely | 2/1/01 | Doc. R. 44, Apx. at Vol. IV, p. 322; 6th Cir. Apx. at 118. *See also State v. Keenan*, 2001 Ohio App. LEXIS 356 (8th Dis. Ohio 2001). |
| Ohio Supreme Court denies jurisdiction on motion for new trial | 6/27/01 | Doc. R. 44, Apx. at Vol. IV, p. 393; 6th Cir. Apx. at 127. *See also State v. Keenan*, 92 Ohio St.3d 1429 (2001). |
| Keenan files his habeas corpus petition | 11/21/01 | Doc. R. 11; 6th Cir. Apx. at 14. |

---

**DISSENT**

---

SILER, Circuit Judge, dissenting. I do not favor dissenting from my colleagues, but the three of us have differing views on the resolution of this case. I would affirm the decision of the district court in dismissing the petition for a writ of habeas corpus under 28 U.S.C. § 2254 as untimely.

No facts are in dispute in this case. As Judge Gilman's opinion relates, when the United States Supreme Court denied *certiorari* on October 5, 1998, it initiated the one-year statute of limitations for petitioning for federal habeas corpus relief under 28 U.S.C. § 2244(d)(1). If the Ohio Supreme Court had not entered its *Glenn* order on November 30, 1998, Keenan would not have any colorable claim for equitable tolling. However, the Ohio Supreme Court entered the order as quoted by Judge Gilman. Nevertheless, after Keenan filed his state petition for post-conviction relief (PCR), the Ohio Court of Appeals found that the PCR petition was untimely and the statute was not tolled. Moreover, as Judge Gilman's opinion states, the Ohio Supreme Court denied a discretionary appeal in *State v. Keenan*, 749 N.E.2d 756 (Ohio 2001)(table decision), on this very question. If the Ohio Supreme Court intended to extend the time within which the petition for PCR could have been filed, that would have been the opportunity to consider the issue. In this case, the Ohio Court of Appeals decided that the application for PCR was not properly filed because it was untimely. As the majority aptly quotes, "[A]n application is '*properly* filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings. These usually prescribe, for example . . . time limits upon its delivery." *Artuz v. Bennett*, 531 U.S. 4, 8 (2000). In Keenan's case, such a time limit has resulted in his PCR petition's being untimely and, therefore, not properly filed. If that petition was not properly filed, his federal § 2254 petition cannot possibly meet the federal one-year statute of limitations, as there was no tolling of the time period from the commencement of the federal limitations period in October 1998.

The majority opinion correctly quotes from *King v. Bell*, 378 F.3d 550, 553 (6th Cir. 2004), that equitable tolling under AEDPA is permissible, although rare. In that case, two of the judges who were on this panel concurred that equitable tolling was correct because the State had agreed to allow the petitioner to file his petition within fifteen days after certain transcripts were made available. After the petitioner filed within the fifteen days, the State then asserted that the statute of limitations had run. The significant difference between the *King* case and the case at bar is that in *King*, the equitable tolling was determined by the federal court to allow the late filing in federal court. In the case at bar, we are asked to toll the statute of limitations under Ohio law, after the Ohio Court of Appeals has determined that the petition was untimely.[1] As the majority correctly observes, Keenan had over ten months from the date of the *Glenn* order of November 30, 1998, within which to file for habeas corpus relief in federal district court. He declined to do so. Since Ohio's courts found that Keenan's petition was not properly before them, this court should be bound by that finding that the statute of limitations was not tolled.

I would decline Keenan's implied invitation to second guess the Ohio court's interpretation of Ohio law. I suspect that the *Glenn* order was entered by the Ohio Supreme Court in order to effect the stay of the execution order which had just been entered. It allowed Keenan to file a petition for PCR within the six months without having to apply for a second stay of his execution. In an analogous case with regard to Ohio's timeliness requirements, we stated that

---

[1] The majority opinion correctly relates that the application of equitable tolling is a question of federal law. But if we are to follow the rule that "federal courts sparingly bestow equitable tolling," *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 560 (6th Cir. 2000), we should at least consider that the Ohio courts have looked at this issue and found it to be meritless.

> [p]rinciples of comity require federal courts to defer to a state's judgment on issues of state law and, more particularly, on issues of state procedural law. Because state courts are the final authority on state law, federal courts must accept a state court's interpretation of its statutes and its rules of practice.

*Israfil v. Russell*, 276 F.3d 768, 771 (6th Cir. 2001)(citations omitted); *see also Vroman v. Brigano*, 346 F.3d 598, 603 (6th Cir. 2003).

Moreover, Keenan failed to raise the equitable tolling issue before the district court until he filed a surresponse memorandum. It should therefore be deemed waived. *See Scott v. Collins*, 286 F.3d 923, 927 (6th Cir. 2002). However, even if not waived, Keenan has failed to show what circumstances were beyond his control that resulted in missing the deadline, except for blaming his counsel. Attorney error is generally not a legitimate basis for equitable tolling. *See Jurado v. Burt*, 337 F.3d 638, 644-45 (6th Cir. 2003). While the concurring opinion from Judge Merritt observes that this tenet conflicts with decisions from other circuits, any persuasive cites are irrelevant due to our decision in *Jurado*. There are no circumstances surrounding this case which would take it out of this general rule. *See Rouse v. Lee*, 339 F.3d 238, 254 (4th Cir. 2003)(en banc)(after extensive review and inquiry, court found that differing standards should not apply to capital cases in enforcing the statute of limitations for collateral review). The concurring opinion criticizes the "maze" of Ohio procedural rules and suggests this is grounds for equitable tolling. However, it is up to the Ohio legislature to amend or revise the "maze," if it thinks there is confusion. Lawyers wade through confusing statutes and rules on a daily basis. Just ask a tax lawyer who deals with the Internal Revenue Code. In our federal system, each state sets up its own procedure for such post-conviction review, and the members of the bar and petitioners are expected to keep up with it.

The concurring opinion quotes some language from the decision in *Lambert v. Warden*, 81 Fed. Appx. 1, 2003 WL 22071466 (6th Cir. 2003). However, "[i]t is well-established law in this circuit that unpublished cases are not binding precedent." *Bell v. Johnson*, 308 F.3d 594, 611 (6th Cir. 2002). Moreover, in *Lambert*, the court was dealing with the operation of Ohio App. R. 26(B), which is not in issue here.

Therefore, I find no error by the district court in this case. I would affirm.